No. 91-041

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

DAVID HARMON,

       Petitioner and Appellant,

-vs-

VERN D. HARMON,

       Employer,

   and

STATE COMPENSATION MUTUAL INSURANCE FUND,

       Defendant and Respondent.

FILED

JUL 30 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Michael G. Eiselein; Lynaugh, Fitzgerald, Eiselein
           & Eakin, Billings, Montana.

       For Respondent:

           Chris Mangen, Jr.; Crowley, Haughey, Hanson, Toole
           & Dietrich, Billings, Montana.

                     Submitted on Briefs:  May 24, 1991

                            Decided:  July 30, 1991

Filed:

_____
                     Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The claimant, Mr. David Harmon (Mr. Harmon), filed a petition in the Workers' Compensation Court under § 39-71-2905, MCA, to resolve a dispute with the insurer, State Compensation Mutual Insurance Fund (State Fund). Following a hearing before hearing examiner Robert J. Campbell, the Workers' Compensation Court found that claimant had not proved by a preponderance of the evidence that he was permanently totally disabled as defined in § 39-71-702, MCA, as a result of a September 18, 1979 injury in an industrial accident. Mr. Harmon appeals. We reverse and remand for further proceedings consistent with this opinion.

The dispositive issues as restated are:

1. Is there substantial credible evidence to support the conclusion that Mr. Harmon's current condition is not the result of the 1979 accident?

2. Did the Workers' Compensation Court err when it found that Mr. Harmon had failed to prove that he is permanently totally disabled?

At the time of trial, Mr. Harmon was a 47 year old married man with three children, two of whom still live at home. Mr. Harmon worked as a ranch hand for his father, Vern Harmon, near Lavina, Montana. He also worked a small ranch of his own. On September 18, 1979, Mr. Harmon was baling hay on his father's ranch. The baler was not tying knots properly and when Mr. Harmon attempted to correct the problem the baling twine wrapped around the end of his right index finger. To prevent his arm from being

2

pulled into the baler, Mr. Harmon jerked back and stripped the soft tissue off the end of his index finger. The jerking action also injured his elbow and shoulder. That evening a portion of his right index finger was amputated midway between the first and second joints. Approximately four months after the accident Mr. Harmon went to see Dr. Huard and Dr. Daniels about the continuing pain in his shoulder. Mr. Harmon's shoulder was diagnosed as a rotater cuff tear. Over the next five months Dr. Huard and Dr. Daniels treated Mr. Harmon with cortizone shots for his shoulder injury. On April 9, 1982, Mr. Harmon received a "Holton" award of $5,370.00 based on a 14 percent whole man impairment rating. While the shots gave temporary relief, the pain became progressively worse with time.

On December 6, 1984, Mr. Harmon suffered another injury while doctoring a 900 pound bull for his father. The bull charged him, hitting him in the mid-section. The rope was wrapped around his right hand and the bull jerked him violently along for approximately 8 feet. Mr. Harmon's back and neck were severely injured in this accident which ultimately resulted in the determination that Mr. Harmon was permanently totally disabled as a ranch hand. Mr. Harmon's shoulder also became more painful for a period of time after the accident. The treating physician, Dr. Lovitt, testified that it was normal to have pain in the shoulders in back injuries such as that experienced by Mr. Harmon and thus his main concern was the back and not the shoulders. He agreed with the diagnosis by Dr. Huard and Dr. Daniels that Mr. Harmon was

3

suffering from a rotator cuff tear and that the back injury caused the pain in the shoulders to be more acute for a period of time following the accident.

Following counseling with Mr. Chet Dever, vocational rehabilitation counselor for Crawford Rehabilitation Services, Mr. Harmon was retrained as a taxidermist in 1987. Mr. Harmon's shoulder continued to cause discomfort and on May 15, 1988, Dr. Lovitt performed a manipulation procedure under anesthesia to loosen Mr. Harmon's shoulder joint. Dr. Lovitt testified that this procedure along with physical therapy exercises was expected to relieve Mr. Harmon of some of the pain to the point that he could live with it and continue his work as a taxidermist.

Three days later on May 18, 1988, the Workers' Compensation Division approved a full and final settlement for a lump sum of $30,000.00 for injuries resulting from the 1984 accident. The settlement acknowledged that Mr. Harmon may require future surgery for the rotator cuff injury and reserved future medical and hospital benefits for the 1984 injuries.

Mr. Harmon suffered two heart attacks in the months following the manipulation procedure and the full and final settlement. The heart attacks postponed further physical therapy exercises for the shoulder injury. Until March 6, 1989, Dr. Lovitt's medical records continued to reflect the belief that Mr. Harmon's shoulder condition was caused by a rotator cuff tear. At that time Dr. Lovitt performed a special x-ray examination which revealed for the first time Mr. Harmon was actually suffering from a degenerative

4

condition known as glenohumeral arthritis. At that time Dr. Lovitt stated in his medical records that he suspected that sometime in the future Mr. Harmon would need a total shoulder replacement. Dr. Lovitt testified that glenohumeral arthritis takes years to develop to the stage that Mr. Harmon's condition was in at the time of trial and that the 1984 accident was too recent to be the cause. Therefore Dr. Lovitt concluded that the glenohumeral arthritis was caused by the 1979 accident.

On April 5, 1989, Dr. Lovitt referred Mr. Harmon to Dr. Thomas Johnson who testified that he agreed with Dr. Lovitt's diagnosis. When questioned about the cause of the arthritic condition, Dr. Johnson testified that he did not look into the cause and that the cause was not of concern to him. Upon further questioning, Dr. Johnson testified that he did not have enough information about the accidents and therefore he had no way of knowing which accident caused the injury.

In light of the new diagnosis, Mr. Harmon sought benefits through State Fund. Mediation was held on July 11, 1989 in an attempt to resolve the dispute between Mr. Harmon and State Fund. When mediation failed to provide a solution, Mr. Harmon filed this petition pursuant to § 39-71-2905, MCA, to resolve the dispute.

I

Is there substantial credible evidence to support the Workers' Compensation Court's conclusion that Mr. Harmon's current condition is not the result of the 1979 accident?

5

The standard to be applied is whether substantial credible evidence exists to support the Workers' Compensation Court's findings of fact. As stated in Lakey v. Kerrian's (1987), 228 Mont. 139, 141, 741 P.2d 416, 417, this Court will not substitute its judgment for that of the Workers' Compensation Court where there is substantial evidence to support that court's findings of fact. The parties submitted several proposed issues to the hearing examiner for determination. Prior to trial the hearing examiner determined that the following issues would be determined by the Court:

1. Whether or not claimant's current condition is a result of his 1979 injury.

2. Whether the claimant is permanently totally disabled as a result of his 1979 injury.

3. Whether the claimant is permanently partially disabled under § 39-71-703, MCA, as a result of his 1979 injury.
(Mr. Harmon's counsel moved to withdraw the issue of permanent partial disability benefits at this time and State Fund agreed that it could be addressed in a later proceeding.)

4. Whether claimant is entitled to a 20 percent penalty pursuant to § 39-71-2907, MCA.

5. Whether claimant is entitled to his costs and attorney fees.

The Workers' Compensation Court did not specifically determine whether the current condition of Mr. Harmon's shoulder was the result of the 1979 accident. Instead, the court stated in its judgment that the claimant had not met the burden of proving his September 18, 1979 right index finger injury resulted in his being permanently totally disabled. This statement is incorrect because

6

it does not address the issue as presented and argued by the parties. The condition at issue is the shoulder injury and not the right index finger injury. Mr. Harmon did not argue or attempt to prove that his current disability is due to the right index finger injury. As presented to the Workers' Compensation Court, the basic issue was whether the injury to Mr. Harmon's shoulder was related to the 1979 accident or to the 1984 accident.

In its conclusions of law, the Workers' Compensation Court made the following factual determination:

> Claimant's position is that the September 18, 1979 injury to his right index finger also injured his right shoulder which has increased in pain to a point that he is permanently totally injured (sic) as a result of that injury. However, from the testimony of the claimant and the medical evidence, it is clear that his shoulder became substantially more painful after claimant's December 6, 1984 injury in which a bull struck him in the mid-section and pulled him by the right arm for 8-9 feet.

> There is no question that claimant was aware of his shoulder injury when he petitioned for a settlement of his December 6, 1984 claim. The medical testimony concerning the present condition of his right shoulder establishes a long term arthritic condition that was accelerated by his 1984 injury. What ever (sic) symptoms he may have felt prior to that time cannot by medical testimony, be found to be the result of the 1979 injury to his right index finger.

This factual determination is not supported in the record by substantial credible evidence. The primary care physician, Dr. Lovitt, testified that glenohumeral arthritis is a degenerative condition that takes years to manifest itself to the stage that Mr. Harmon's shoulder was in at the time of trial. The Workers' Compensation Court based its conclusion that Mr. Harmon could not relate his current condition back to 1979 on Dr. Johnson's

7

testimony that he had no way of knowing whether the claimant's 1979 injury or his 1984 injury caused his shoulder impairment more than the other. However, this statement by Dr. Johnson followed testimony that he did not look into the cause of Mr. Harmon's condition, that his primary concern was to treat the condition, and that he did not have sufficient facts on the two accidents to make such a determination. In considering all the medical testimony as a whole, the statement by Dr. Johnson that he could not relate the condition to the specific accident does not rise to the level of substantial evidence to support the Workers' Compensation Court's conclusion that Mr. Harmon did not meet his burden of proof that the shoulder injury was caused by the 1979 accident. We conclude that the medical evidence establishes Mr. Harmon's shoulder condition was caused by the 1979 accident. Therefore we hold that the Workers' Compensation Court's conclusion that Mr. Harmon's current condition was not the result of the 1979 accident is not supported by substantial credible evidence.

State Fund argues that it does not matter if the 1979 accident originally caused the shoulder injury because the evidence indicates that the shoulder injury was aggravated by the 1984 accident and therefore the full and final settlement for the 1984 accident fully compensated Mr. Harmon for his shoulder injuries. This argument is not persuasive. As we have already concluded, the medical evidence establishes Mr. Harmon's shoulder injury was caused by the 1979 accident. At that point the burden shifted to State Fund to prove that Mr. Harmon's shoulder had reached maximum

healing before the 1984 accident. Belton v. Carlson Transport (1983), 202 Mont. 384, 389-90, 658 P.2d 405, 408. The record does not contain any medical evidence to establish that Mr. Harmon's shoulder had reached maximum healing prior to 1984.

II

Did the Workers' Compensation Court err when it found that Mr. Harmon had failed to prove he is permanently totally disabled?

Section 39-71-116(13), MCA (1979), defines permanent total disability as:

> "Permanent total disability" means a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capacity that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market.

The hearing examiner determined that Mr. Harmon had failed to meet the second requirement of § 39-71-116(13), MCA, to establish that he has a total loss of actual earnings or earning capacity as a result of his shoulder injury. The court stated:

> There is no question that claimant was aware of his shoulder injury when he petitioned for a settlement of his December 6, 1984 claim. The medical testimony concerning the present condition of his right shoulder establishes a long term arthritic condition that was accelerated by his 1984 injury. . .

The record does not support a factual determination that the long term arthritic condition was accelerated by the 1984 injury. It is clear from the record that prior to 1989 neither the doctors, the parties, nor the Workers' Compensation Court knew that Mr.

9

Harmon's shoulder condition was caused by degenerative glenohumeral arthritis, and therefore the claimant and the State Fund both were not aware of the nature and extent of Mr. Harmon's shoulder injury when he was retrained as a taxidermist and when the full and final settlement was signed. The medical testimony established that the long term arthritic condition was not diagnosed for almost a year after the settlement and two years after retraining.

Chet Dever, the vocational rehabilitation counselor who handled Mr. Harmon's retraining claim, testified that he is of the opinion that Mr. Harmon is capable of earning money as a taxidermist at this time. Mr. Harmon testified that he is optimistic that he will eventually be able to continue as a taxidermist. Mr. Dever testified that his projections indicate that in ten years Mr. Harmon will be grossing in excess of $50,000.00 per year. Mr. Harmon voiced this same expectation.

However, Dr. Lovitt testified that the range of motion of Mr. Harmon's right arm due to the shoulder's arthritic condition is limited to 60 degrees of external rotation, 45 degrees of internal rotation, and 90 degrees of abduction, which in layman's terms is about eight o'clock forward, backwards, and out from the body. This limited motion prevents Mr. Harmon from lifting his arm high enough to pull, stretch, and sew animal skins onto the forms. Dr. Lovitt is personally familiar with the profession of taxidermy and all that the work entails. Mr. Harmon admitted that he had to depend on volunteer help to stretch and sew the animal skins on the forms because he could not lift his right arm high enough to reach

10

around the forms.

Mr. Mark Schwager, rehabilitation counselor employed by National Rehabilitation Consultants, testified that based on his study in his opinion Mr. Harmon is totally unemployable. Mr. Schwager reviewed the depositions and medical records of Dr. Lovitt and Dr. Johnson. He interviewed and observed several taxidermists at work, including the taxidermist who operates the only taxidermy school in Montana and who had trained Mr. Harmon. Mr. Schwager also considered the Vocational Diagnostic Assessment of Residual Employability in light of Mr. Harmon's vocational history and medical information. Mr. Schwager concluded that Mr. Harmon's limited shoulder motion prevents Mr. Harmon from pursuing his goal to continue as a taxidermist. Mr. Schwager testified to the stiff competition among Montana taxidermists, and stated that leading Montana taxidermists with national reputations are fortunate to make $20,000.00 per year. Therefore Mr. Schwager concluded Mr. Dever's and Mr. Harmon's expectations of an eventual income of $50,000.00 a year were unrealistic. The hearing examiner found that Mr. Schwager's testimony was not credible because Mr. Schwager had not personally observed Mr. Harmon working in his shop. However, on remand Mr. Schwager's testimony warrants consideration in light of the medical testimony and the extent of Mr. Schwager's professional investigation.

Mr. Harmon testified that in 1988 he made a "couple of hundred dollars" and in 1989 he made $826.00. With the help of volunteers doing the heavier work he expected to gross about $6,000.00 in

11

1990. Mr. Dever testified that these figures are consistent with his projections and that as Mr. Harmon's reputation increased his income would increase.

Dr. Lovitt provides insight into Mr. Harmon's optimistic point of view by stating that Mr. Harmon is a

> hard-driving, hard-working type person that really doesn't consider himself to have the time to give in to lesser aches and pains. And we frequently see ranchers like this working themselves into a rather significant pickle because they don't have the time for - - you know, they consider their job and their ranch and so forth more important and they are supporting their family, more important than these what they would consider lesser aches and pains that may not be lesser [and who] obviously the way he has handled his back is certainly not a pain-prone guy. He is nobody's sissy or wimp, you know. And these guys can tend to play down things for whatever reason . . .

In light of all the testimony, we conclude that there is substantial evidence to establish that Mr. Harmon has become permanently disabled due to the arthritic condition of his shoulder. We conclude that the Workers' Compensation Court erred when it found that Mr. Harmon had failed to prove that he is permanently disabled. However, because the Workers' Compensation Court based its determination on the premise that Mr. Harmon could not relate the injury to the 1979 accident and because the court reserved the question of permanent partial disability, we remand this case back to the Workers' Compensation Court for further proceedings consistent with this opinion to determine whether Mr. Harmon's permanent disability is partial or total in nature. The Workers' Compensation Court may properly hold additional hearings or admit additional evidence as needed to determine the issues

12

before the court on remand.

Reversed and remanded.

_____
                          Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
          Justices

13

July 30, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Michael G. Eiselein
Lynaugh, Fitzgerald, Eiselein & Eakin
P.O. Box 1729
Billings, MT  59103

Chris Mangen, Jr.
Attorney at Law
P.O. Box 2529
Billings, MT  59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy