No. 91-540

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

ROBERT W. ROBINSON,

Claimant and Appellant,

-vs-

STATE OF MONTANA,

Employer,

and

STATE COMPENSATION MUTUAL INSURANCE FUND,

Defendant and Respondent.

FILED

JUL 10 1992

Ed Smith
CLERK OF SUPREME COURT.
STATE OF MONTANA

APPEAL FROM: Workers' Compensation Court,
The Honorable Timothy W. Reardon,
Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lon J. Dale and Kristine L. Foot, Milodragovich,
Dale & Dye, Missoula, Montana

For Respondent:

Oliver H. Goe, Browning, Kaleczyc, Berry & Hoven,
Helena, Montana

Submitted on Briefs: April 23, 1992

Decided: July 10, 1992

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Robert W. Robinson appeals from a judgment entered by the Workers' Compensation Court which concluded that Robinson failed to prove his alleged head injury is the result of a September 1986 work related injury. We affirm.

Although several issues are submitted on appeal, we find only one necessary for our review:

Whether substantial credible evidence supports the Workers' Compensation Court's determination that Robinson failed to prove by a preponderance of the evidence that his alleged head injury is the result of a work related fall.

On September 16, 1986, Robinson fell outside the Sugar And Spice Day Care Center following a routine inspection as a deputy fire marshal. On the following afternoon Robinson went to the emergency room at Kalispell Regional Hospital. Robinson was treated by Gregory Harrah, M.D. Robinson reported he tripped and fell injuring his right ankle and left shoulder. On September 17, 1986, Robinson reported the accident to his employer, the Montana Department of Justice, Fire Marshal Bureau. He reported he fell at the day care center, spraining his ankle and injuring his back. Robinson was given until November 1, 1986 to submit medical certification of his ability to return to work. For reasons unrelated Robinson was terminated from his position.

Robinson received disability related to his back injury resulting from the fall from the State Compensation Mutual Insurance Fund (State Fund). He filed an action with the Workers'

Compensation Court seeking a determination that the State Fund be ordered to pay benefits related to the alleged head injury he received during the fall at the day care center, including domiciliary care services and attorney fees. The Workers' Compensation Court concluded that the State Fund was not liable for Robinson's alleged head injury. This appeal followed.

Following Robinson's emergency room visit with Dr. Harrah, he has been seen by numerous doctors and psychologists. The Workers' Compensation Court reviewed the testimony from the various physicians and psychologists as well as the testimony of family members, friends, and attorneys who worked with Robinson.

Dr. Harrah, the emergency room physician, treated claimant for a shoulder strain and a right ankle sprain. Dr. Harrah reported no evidence of a head injury. Dr. Harrah opined to a reasonable degree of medical certainty that Robinson was not suffering from a head injury at the time of his emergency room visit. On November 17, 1986, Robinson was treated by Dr. Jerome Wildgen for low back pain, left leg pain, and tenderness over the tailbone. Dr. Wildgen testified that he made no record of a head injury, nor did he recollect finding any symptoms of a head injury, or other indications of organic brain damage. Dr. Wildgen continued to see Robinson until September 8, 1987.

The first indication in the records that Robinson reported a head injury was December 15, 1987 when he saw Dr. Gary Cooney. Robinson complained of headaches and reported he hit his head when he fell in September of 1986. Dr Cooney made no diagnosis of brain

3

injury to Robinson. Robinson maintains that he initially reported a head injury to his employer. In fact, an attachment to the written report Robinson submitted to the Workers' Compenation Division in October of 1986 states that his head, back, and leg hurt after the fall.

Robinson's treating physicians, with the exception of Dr. Susan Bertrand, a physiatrist, did not make a diagnosis of a head injury. Dr. Bertrand did not begin treating Robinson until February 21, 1989, two years and five months after Robinson fell. Dr. Donald Nockleby, a clinical psychologist, referred Robinson to Dr. Bertrand for treatment of depression. Dr. Nockleby has not testified in this case. Dr. Nockleby noted in his referral that Robinson suffered a head injury. The Workers' Compensation Court found that Dr. Bertrand assumed from the beginning that Robinson suffered from a head injury.

Dr. Bertrand treated Robinson for back pain and depression. She diagnosed Robinson with diffuse axonal damage to the brain. She testified this type of damage could occur as a result of a minor fall. Dr. Bertrand based her diagnosis upon reports from psychologists Heider, Trontel, Nockleby, Webber, and Robinson and his wife. These reports indicate that Robinson has cognitive problems.

Dr. Bertrand testified that symptoms resulting from head injuries arise fairly quickly; within thirty-six hours. However, she also stated that if you are not looking for a head injury, it would be easy to miss the diagnosis. She stated that the problems

4

with Robinson's tangential thinking would have been apparent back in November of 1986. Dr. Bertrand did not review the records of either Dr. Harrah or Dr. Wildgen. She noted that Dr. Cooney did not perform a mental status examination. Although she did not perform one either, she states that Robinson had similar tests done prior to seeing her.

Cliff Edwards, a Billings attorney, worked with Robinson in 1985 and 1986 in a lawsuit arising out of a school fire. Edwards testified that after the accident he first saw Robinson in January or February 1987. Robinson appeared to be a different man. He couldn't keep a train of thought and appeared nervous and depressed. Dana Christensen, a Kalispell attorney, also worked with Robinson prior to his fall. Christensen did not see Robinson after his fall until early 1989. At that time Christensen described Robinson as being much smaller, very nervous, agitated, very forgetful and repetitive. Robinson seemed like an entirely different person than the robust, intelligent fire marshal he previously worked with. However, Dan Hileman, a Kalispell attorney who represented one of the defendants in Robinson's lawsuit against the day care center, testified that in November of 1987 Robinson appeared competent, and answered questions appropriately.

Our standard of reviewing a decision of the Workers' Compensation Court is to determine if there is substantial evidence to support the findings and conclusions of that court. When there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision. Wood v. Consolidated

5

Freightways (1991), 248 Mont. 26, 28, 808 P.2d 502, 504; Garcia v. State Fund (1991), ___ Mont. ___, ___ P.2d ___, 49 St.Rep. 440. When the findings are based on conflicting evidence, our function is to determine whether there is substantial evidence to support such findings. Schrapps v. Safeway Stores, Inc. (1989), 238 Mont. 355, 777 P.2d 887.

The Workers' Compensation Court concluded that State Fund was not liable for the head injury claimant alleges to have suffered during the course and scope of his employment on September 16, 1986. Robinson must prove by a preponderance of the probative credible evidence that his head injury is the result of his September 1986 fall at the Sugar and Spice Day Care Center. Dumont v. Aetna Fire Underwriters (1979), 183 Mont. 190, 598 P.2d 1099; Martin v. Phillips Petroleum Co. (1987), 229 Mont. 529, 747 P.2d 1363. Further, "evidence demonstrating only a medical possibility does not mandate a conclusion that the claimant has met the burden." Schrapps at 357, 777 P.2d at 888. Substantial evidence exists to support the Workers' Compensation Court's finding. As stated above, the physicians who examined Robinson after his fall did not diagnose a head injury. Dr. Susan Bertrand did diagnose a diffuse axonal damage to Robinson's brain. However, Dr. Bertrand's singular testimony that a fall of this type could result in injury to the brain does not "mandate a conclusion that the claimant has met his burden."

Robinson relies on Harmon v. Harmon (1991), 249 Mont. 387, 816 P.2d 1032, to support his case. In Harmon we reversed the Workers'

6

Compensation Court's finding that the claimant had not proved by a preponderance of the evidence that he was permanently totally disabled. Dr. Lovitt, Harmon's treating physician, testified that Harmon's condition was caused by a 1979 accident. Dr. Lovitt made a diagnosis after performing a special x-ray examination. However, the Workers' Compensation Court relied on the testimony of Dr. Johnson. Dr. Johnson testified that he agreed with Dr. Lovitt's diagnosis, but stated he did not look into the cause of the condition. Harmon at 391, 816 P.2d at 1034. We stated that Dr. Johnson's testimony stating he did not relate the condition to a specific accident did not rise to substantial evidence to support the Workers' Compensation Court's conclusion that Harmon did not meet his burden of proof. Harmon at 392, 816 P.2d at 1035.

In the case before us, Robinson's first three post-accident physicians did not diagnose Robinson with a head injury. Further medical tests performed on Robinson were negative for a head injury. Over two years post-accident, Dr. Bertrand, Robinson's physician, made a diagnosis of diffuse axonal injury. The Workers' Compensation Court relied on the testimony of Drs. Harrah, Wildgen, and Cooney, none of whom diagnosed Robinson with a head injury.

We conclude that substantial credible evidence exists to support the Workers' Compensation Court's determination that Robinson failed to prove by a preponderance of the evidence that his alleged head injury is a result of a September 1986 work related fall.

7

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to the West Publishing Company.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

8

July 10, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Kristine L. Foot
Milodragovich, Dale & Dye
P.O. Box 4947
Missoula, MT   59806-4947

Oliver H. Goe
Browning, Kaleczyc, Berry & Hoven
P.O. Box 1697
Helena, MT   59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudail_
        Deputy