No. 82-90

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

RALPH V. BELTON,

                    Claimant and Respondent,

    vs.

CARLSON TRANSPORT, Employer,

    and

HARTFORD ACCIDENT AND INDEMNITY COMPANY,

                    Defendant and Appellant,

    and

RICE TRUCK LINE, Employer,

    and

TRANSPORT INDEMNITY COMPANY,

                    Co-Defendant and Respondent.

Appeal from:   Workers' Compensation Court
               Honorable Tim Reardon, Judge presiding.

Counsel of Record:

    For Appellant:

        Crowley, Haughey, Hanson, Toole & Dietrich,
         Billings, Montana
        Randall Bishop argued, Billings, Montana

    For Respondents:

        Victor R. Halverson argued, Billings, Montana
        Garlington, Lohn and Robinson, Missoula, Montana
        Larry E. Riley argued, Missoula, Montana

                    Submitted:  September 17, 1982

                      Decided:  February 7, 1983

Filed: FEB 7 - 1983

_____
                                Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Hartford Accident and Indemnity Company (Hartford) appeals from an order of the Workers' Compensation Court which held that Hartford must pay permanent total disability benefits to claimant, Ralph Belton. Claimant injured his back in two separate accidents—one in 1977, when Hartford was on risk—and one in 1979, when Transport Indemnity was on risk. The Workers' Compensation Court found that claimant's 1979 injury was an aggravation of the 1977 injury, and because the 1977 injury had not "completely healed," Hartford, rather than Transport Indemnity, must pay the compensation benefits. We vacate the order and remand for further proceedings.

The trial court based its decision on Little v. Structural Systems (1980), ____ Mont. ____, 614 P.2d 516, 37 St.Rep. 1187. We held in Little that:

> "Where there have been two accidents, each occurring under a different insurer, and the second happens before the first injury is completely healed, the second accident is incident to the first and the first insurer is required to pay all compensation." (Emphasis added.) 614 P.2d at 519.

We recognize that use of the term "completely healed" was an unfortunate choice of language and that a more meaningful term based on medical fact and legal conclusion, would have been one such as "maximum healing," "medically stable condition," or one which conveys the message that the claimant's condition had arrived at a point where it would get no better even though the claimant would still have symptoms of the injury whether it be an objective sign or a subjective symptom such as pain.

The claimant sustained a series of work-related injuries between 1970 and 1979. Between September 1971 and mid-1977, he was totally disabled, due in part to low back pain for which he was rated 15 percent permanently partially impaired. During this

1

period, he received total disability benefits from the Social Security Administration. Two of the accidents involved here occurred after he went back to work in 1977. The first accident occurred on November 7, 1977 and the second occurred on December 7, 1979.

Claimant was a long-haul truck driver. On November 7, 1977, while employed with Carlson Transport, and while Hartford Indemnity was on risk, claimant slipped on a frost-covered trailer and fell. He injured his buttocks on the edge of the trailer and slipped off the trailer onto the ground injuring his lower back. The injury was diagnosed as a "lateral extradural defect at L4-5." Hartford Indemnity paid compensation benefits until March 31, 1978, when claimant was released to go back to work. He returned to Carlson Transport in April 1978, but later worked for other trucking firms.

On December 7, 1979, while working for Rice Truck Line, and while Transport Indemnity was on risk, claimant slipped off a fuel tank on which he had been standing. He fell approximately three feet and when he hit the ground most of his weight was on his left foot. He immediately felt pain and it increased over the next four hours. He went to the doctor and he has not worked since. Both insurers concede, and the trial court found that claimant has been totally disabled since the December 1979 accident. It is also undisputed that the December 1979 accident aggravated the lower back injury sustained in November 1977.

Claimant testified, that he was often in pain after the 1977 lower back injury up to the time of the 1979 accident. He testified that he was also limited in some of the work he was required to do. He needed help in putting up the end gage of the trailer; he needed help in putting the tarp over the loads he carried; and he had to stop at least once every 100 miles to briefly rest his back, while

2

before he only had to stop once every 200 miles. A co-worker corroborated claimant's difficulties in performing his job.

At trial, Transport Indemnity relied entirely on our "completely healed" requirement in Little, and in its appellate brief Transport Indemnity has cited and discussed only the Little case. We have no doubt, furthermore, that it was our unfortunate choice of language in Little which led to the trial court's ruling.

The trial court ruled that Hartford Indemnity must prove that claimant sustained a "separate and distinct injury from the November 7, 1977 injury" and that "implicit in this burden is a requirement of proof that the claimant had completely healed from the first injury . . ." (Emphasis added.) The court examined the evidence and using the "completely healed" requirement as the standard, concluded that:

> ". . . the claimant had certainly reached maximum healing for purposes of determining temporary total disability during the period beginning March of 1978 through December of 1979. But the requirement of Little is that the claimant must have reached complete healing. Here, none of the doctors would state that the claimant was completely healed." (Emphasis added.)

Based on this analysis of the evidence (which was correct) the trial court held that Hartford Indemnity must pay the compensation benefits. Because of our language in Little, the trial court had little choice but to conclude that Hartford Indemnity must pay the benefits. Nevertheless, we hold that the trial court reached an improper legal conclusion based in part on our erroneous "completely healed" standard.

A compensable event does not require that a "separate and distinct injury" be proved. It has long been the law that an accident is compensable if the traumatic event or unusual strain aggravates a pre-existing injury. The employer takes the employee as he finds him. Therefore, no basis exists to conclude that a

3

second accident is compensable as a separate event only if it is proved that the injury resulting from the first accident had "completely healed." The facts reveal without question that two accidents are involved.

An industrial accident is defined in part by section 39-71-119(1), MCA, as "a tangible happening of a traumatic nature . . ." The slip and fall in 1977 and the slip and fall in 1979 were without question "a tangible happening of a traumatic nature . . ." Further, the 1979 slip and fall indisputably aggravated the injuries received in the 1977 accident, and this 1979 accident is just as indisputably compensable.

The "completely healed" standard set forth in Little is not an appropriate standard by which to determine whether the insurer on risk during the first accident or the insurer on risk during the second accident should pay the benefits. We have no difficulty in distinguishing the facts here from the facts in Little, but the fact remains that we adopted the "completely healed" standard in Little, and it is a standard we now expressly overrule.

In Little, on April 4, 1978, while U.S.F.&G. was the compensation carrier for the employer, claimant injured his knee. However, he continued to work and did not see a doctor. Two months later, on June 6, 1978, claimant again injured his knee while working for the same employer. At this time, however, Industrial Indemnity was the compensation carrier for the employer. Claimant reported this second accident and sought medical attention. The question arose as to whether U.S.F.&G., the insurer during the first accident, or Industrial Indemnity, the insurer during the second accident, should pay the compensation benefits. Medical testimony established that claimant was a stoic noncomplainer who had knee problems going back to 1941. Both the April 1978 and the June 1978 accidents aggravated this longstanding knee problem.

4

The treating doctor testified that when claimant reinjured his knee in the June 1978 accident, his knee had not recovered from the injury just two months before in the April 1978 accident. Although neither the questions put to the doctor nor the answers were framed in language of whether claimant had reached "maximum healing," or had reached a "medically stable condition" at the time of the second accident, we have no doubt that this is what the doctor meant when he testified that claimant had not fully recovered from the knee injury sustained just two months before. Based on this testimony, we held that the insurer on risk at the time of the first accident must pay the compensation benefits.

Our adoption of the requirement "completely healed" in Little may have been occasioned by our use of this term in Newman v. Kamp (1962), 140 Mont. 487, 374 P.2d 100, cited and quoted in Little. In listing the important facts we stated in Newman that the (claimant's) injury caused by the first accident had not completely healed at the time of the second accident. 140 Mont. at 494, 374 P.2d at 102. However, the issue was not the same in Newman. There, the essence of our holding was a rejection of the "last injurious exposure" rule and a holding that instead the particular injury must be the proximate cause of the present condition for which the claimant seeks compensation. 140 Mont. at 494, 374 P.2d at 104. We now expressly reject this term because it creates a dichotomy between medical fact and legal conclusion.

Doctors will rarely, if ever, say that an injury has "completely healed." On the other hand, doctors can testify as to whether a particular injury has reached a point of "maximum healing," or a "medically stable condition." So, a question of whether a person has reached "maximum healing" or a "medically stable condition," has meaning to a doctor who must give an opinion as to whether a point has been reached to constitute the end of a

5

healing period. But even an affirmative answer to these questions does not necessarily mean that the injured person is free of symptoms, whether it be a subjective symptom such as pain or objective signs which can be determined by an examination or tests.

We also recognize that the Workers' Compensation statutes, for the purpose of focusing on the transition from one stage of recovery to another, or one stage of compensation to another, do not require "complete recovery." Rather, the definitional statute, section 39-71-116, MCA, and particularly subsections (12), (13), and (19), have as their focal point a state in which the question turns on whether the "injured worker is as far restored as the permanent character of his injuries will permit."

This Court has recognized these statutory criteria in determining the transition point from one point of recovery to another or one stage of compensation to another. See, for example, Anderson v. Carlsons Transport (1978), 178 Mont. 290, 583 P.2d 440; Hendricks v. Anaconda Company (1977), 173 Mont. 59, 566 P.2d 70; and McAlear v. Arthur G. McKee and Company (1976), 171 Mont. 462, 558 P.2d 1134. Although we used the word complete in Anderson, it was not meant there that a person must be symptomless before he has reached a point where he is no longer temporarily totally disabled.

Other jurisdictions have reached similar holdings when called on to determine or define the healing period. See, for example, Armstrong Tire and Rubber Company v. Kubli (Iowa App. 1981), 312 N.W.2d 60, and ~~Dofier~~ Dodier v. State Department of Labor (N.H. 1977), 373 A.2d 341. Particularly instructive is the Georgia case of Garner v. Atlantic Guilding Systems Inc. (1977), 142 Ga.App. 517, 236 S.E.2d 183, because it dealt with the same problems of semantics we are concerned with here. The Georgia court cautioned against the use of the term "aggravation" when meant to express a condition where the

claimant's condition worsened after the injury because of the wear and tear of performing his usual duties. If the event occurs because of a new accident, the Court declared that the term "aggravation" should be used; but if the event occurs when it does not arise out of a new accident, the Court cautioned that the terminology of "gradual worsening or deterioration, or recurrence, as appropriate to the circumstances," should be used. 236 S.E.2d at 184.

In a later case, this clarified rule was applied to make the second carrier liable in a factual situation remarkably similar to this case. Crown American Inc. v. West (1977), 143 Ga.App. 525, 239 S.E.2d 208. The Court found that the events leading to the claimant's total disability were in aggravation of the pre-existing condition and therefore compensation was found to be payable at the rates in effect at the time the compensable aggravation resulted in the worker's total disability. From this, the Georgia court found the second carrier was liable. Crown American Inc., 239 S.E.2d at 210.

Based on what we consider the proper test to be for the healing period, the claimant had reached that point of recovery from the 1977 injury, when he had the 1979 accident which resulted in an aggravation of the 1977 injury. The trial court held not only that this was an aggravation of a pre-existing injury, but also that claimant had reached maximum healing for purposes of determining temporary total disability--in effect that he had reached a medically stable condition.

Despite this state of the record, we do not feel a reversal is warranted. It would not be fair, to either side, to hold now that "maximum healing" or "maximum recovery" or a "medically stable condition" had been reached. Both the claimant and Transport Indemnity proceeded at hearing on the basis that Hartford Indemnity

7

had the burden to prove that claimant had "completely healed." They confined their proof to the "completely healed" standard set forth in Little. In addition, claimant has a special interest in this case because of the changed and decreased rates of compensation. Although it would not normally be the case, the compensation rates in effect at the time of claimant's 1979 accident were less than those in effect during claimant's 1977 accident. Justice requires, therefore, that the parties have another evidentiary hearing to determine whether Hartford Indemnity or Transport Indemnity should pay the benefits to claimant.

Although not raised as an issue, we also address the question of which insurer has the burden of proof to establish that claimant had reached a medically stable condition before the December 1979 accident. In Little, we held that the burden was on the insurer seeking to avoid paying. 614 P.2d 520, 37 St.Rep. 1191. However, this requirement is of no help where, as here, each insurance company is disclaiming coverage. Both insurance companies contend they have no duty to pay compensation to claimant--each contends that it is the other insurance company's duty to pay benefits.

We hold that the burden of proof is properly placed on the insurance company which is on risk at the time of the accident in which a compensable injury is claimed. This holding assures that claimant will always know which insurer he can rely on to pay the benefits. It is the duty of the insurance company on risk to pay the benefits until it proves, or until another insurance company agrees, that it should pay the benefits. If it is later determined that the insurance company on risk at the time of the accident should not pay the benefits, this insurance company, of course, has a right to seek indemnity from the insurance company responsible for the benefits already paid out to the claimant.

8

The order of the Workers' Compensation Court is vacated and the case remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

9