No. 89-202

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

EBI/ORION GROUP,
          Petitioner and Appellant,
     -vs-

STATE COMPENSATION INSURANCE FUND,
          Defendant and Respondent.

IN RE:   CLAUDE L. ATHEY,
          Intervenor and Claimant.

FILED

NOV 29 1989

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court, The Honorable
               Timothy Reardon,  Judge presiding.

COUNSEL OF RECORD:

     For Appellant:
          Charles E. McNeil and Bradley J. Luck; Garlington,
          Lohn & Robinson, Missoula, Montana

     For Respondent:
          Jerome S. Knutson;  Murray, Kaufman, Vidal, Gordon &
          Ogle, Kalispell, Montana
          Joseph F. Daley;  Daley, Seaman & Vannoy, Kalispell,
          Montana

                    Submitted on Briefs: August 10, 1989

                        Decided:  November 29, 1989

Filed:

_____
                    Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

We reverse the summary judgment granted by the Workers' Compensation Court holding in effect that no genuine issue of material fact was presented as to the right of EBI-Orion Group for indemnification from the State Compensation Insurance Fund. We determine that there are substantial issues of material fact which must be decided by the Workers' Compensation Court, and so remand the cause for further proceedings in accordance with this opinion.

The issue in this case is whether EBI-Orion (EBI) may be entitled to indemnification from the State Compensation Insurance Fund relating to a compromise settlement between EBI and an injured employee, which compromise was approved by the Division of Workers' Compensation.

Claude Athey was an employee of Harp Line Construction in Kalispell, Montana. On September 19, 1985, when EBI was the Workers' Compensation carrier for Harp, Claude Athey slipped and fell while carrying nuts and bolts and sustained a back injury in the course of his employment. However Athey did not file a claim for benefits relating to this date until the State Fund received such a claim from Athey on September 16, 1986. On receipt of the claim, the State Fund began payment of temporary total benefits to Athey.

In the course of investigation, the State Fund made a determination that Athey's accident had actually occurred on September 19, 1985. The State Fund therefore terminated payments because the State Fund coverage of Harp Line Construction did not commence until October 1, 1985. The date determined by the State Fund as the date of the accident preceded the coverage date for State Fund.

EBI, as the carrier whose coverage was in effect on September 19, 1985, first denied liability for late notice to the employer, but later accepted liability and began making benefit payments to Athey.

In the period following September 19, 1985, Athey had continued his employment with Harp Line Construction. The winter months were slow and he was called only occasionally to work. He returned to steady employment in May of 1986 for Harp Line Construction.

In the course of the summer of 1986, Athey's employment duties included lifting of heavy objects. On August or September of 1986, while State Fund was the compensation carrier for Harp, he was engaged in stacking iron or heavy tires when the condition of his back increased to the point where he could no longer work. He informed his employer, and from the record here, Athey has not worked since.

During the period that the State Fund was making payment of benefits to Athey, one of its field investigators filed a report respecting Athey's case with the following language in his report:

> It should be noted however that just prior to his leaving on September 8, 1986, the claimant however was involved in fairly strenuous activity in stacking these tires and apparently this is also when he started to complain more about his condition and told Mr. Harp that he could not continue.

It was after Athey's back reached the condition that he could no longer work that he filed his first claim for benefits with the State Compensation Insurance Fund.

On April 2, 1987, when EBI accepted liability for the September 19, 1985 claim, it did so by letter, including a reservation of rights to recover any amount paid in the event

3

that further investigation revealed that a second injury occurred while the State Fund was on the risk.

In May 16, 1988, counsel for EBI wrote to the State Fund that EBI had agreed to a compromise settlement of Athey's claim for Workers' Compensation benefits, but that the settlement included a reservation by EBI as to its right to pursue the issue of a second injury against the State Fund. The letter requested the State Fund to contribute 50 percent toward the settlement which was by the State Fund denied.

On June 27, 1988, Athey filed a petition for compromise by settlement with EBI for the sum of $52,000. Included in the petition was the language:

> The insurer reserves all rights to pursue indemnification for all of amounts paid to claimant from the State Compensation Insurance Fund for any second injury which may have occurred during the summer of 1986.

On August 1, 1988, the Division of Workers' Compensation approved the compromise settlement in an order which included language that the insurer reserved all rights to pursue indemnification against the State Fund for any second injury which may have occurred during the summer of 1986.

Following the approval of settlement, EBI undertook to obtain medical records and depositions from a team of doctors. On September 2, 1988, it forwarded to the State Fund copies of the depositions of Dr. Ricker and Dr. Coolidge. In its September 2 letter, EBI claimed that the evidence showed that Athey had reached medical stability and maximum healing from the injury of September 19, 1985 and that he received a second injury by aggravation of the underlying condition while the State Fund was on the risk in September of 1986. In the letter, EBI demanded complete indemnification for the compromise paid, and other expenses. The State Fund denied the demand.

4

EBI filed a petition before the Workers' Compensation Court for a determination as to its right of indemnification. The hearing examiner, in his proposed order, held that there was no genuine issue of material fact, that the reservation of rights by EBI in its final compromise settlement petition was not binding upon the State Fund, that the only claim filed by Claude Athey was a full and final compromise settlement of an accident which occurred on September 19, 1985 and that the compromise settlement was voluntarily paid by EBI. The Workers' Compensation Court adopted the proposal of the hearings examiner and on February 22, 1989, granted the motion of State Fund for summary judgment and dismissed EBI's petition. From that order of summary judgment, EBI appeals.

EBI contends on appeal that the Workers' Compensation Court erred when it determined that EBI's reservation of indemnity rights in its compromise settlement had no effect on the State Fund; that the evidence established genuine issues of material fact precluding summary judgment, and that it is entitled to have those issues determined by the Workers' Compensation Court.

The State Fund contends that EBI cannot shift its liability for the settlement to the State Fund, that any recovery for a 1986 injury is barred by the failure of EBI to comply with the claim and notice requirements of § 39-71-601, -603, MCA, that EBI lacked standing to bring a workers' compensation claim, and that the Workers' Compensation Court properly granted summary judgment.

In Belton v. Carlson Transport (1983), 202 Mont. 384, 392, 658 P.2d 405, 409-410, this Court said:

> We hold that the burden of proof is properly placed on an insurance company which is on the risk at the time of the accident in which a compensable injury is claimed. This holding assures that claimant

5

will always know which insurer he can rely on to pay the benefits. It is the duty of the insurance company on risk to pay the benefits until it proves, or until another insurance company agrees, that it should pay the benefits. If it is later determined that the insurance company on risk at the time of the accident should not pay the benefits, this insurance company, of course, has a right to seek indemnity from the insurance company responsible for the benefits already paid out to the claimant.

This Court held to the Belton rule in Stangler v. Anderson Meyers Drilling Company (Mont. 1987), 746 P.2d 99, 101, saying:

In Belton v. Carlson Transport (1983), 202 Mont. 384, 658 P.2d 405, this Court adopted the idea of "maximum healing" and "successive injuries" in order to more fairly assess which employer is responsible for an employee's on-the-job injury. Maximum healing means that following a compensable injury a claimant has reached a point constituting the end of the healing period. It does not mean the person is free of symptoms such as pain or objective signs. Belton, 658 P.2d at 408.

The rule of Belton controls a situation where an employee has been injured more than once and different employers' insurance carrier are at risk for the separate injuries. If the first injury has not reached maximum healing, the insurer at risk at the time of the first injury will be responsible for the second injury as well. If the claimant is medically stable or has reached maximum healing, the insurer at risk at the time of the second injury is responsible for Workers' Compensation benfits.

Under the medical testimony and other evidence of this case, a genuine issue of material fact exists as to whether Athey had attained maximum healing from the incident of September 19, 1985, prior to the time in 1986 when he found that his back condition prevented him from further working. (In Belton, we used the terms "maximum healing," "maximum

6

recovery," and "medically stable condition" interchangeably. Belton, 658 P.2d at 409.)

In Stangler, this Court also said:

> . . . we now uphold the Belton rule that once a claimant has reached the maximum healing or a medically stable condition the insurer at risk at the time of the original injury is no longer responsible for any subsequent injuries or conditions.

Stangler, 746 P.2d at 103.

Nonetheless, State Fund contends that because EBI made a compromise settlement with Athey without the participation of State Fund, that State Fund is no longer liable for any second injury. Moreover, State Fund contends that the compromise settlement referred only to a September 19, 1985 injury, and not to any subsequent injury and therefore does not relate to any claim of Athey's for a second injury.

The right of indemnity is that where one is compelled to pay money which, in justice, another ought to pay, the former may receive from the latter the sums so paid. Raisler v. Burlington Northern R. Co. (1985), 219 Mont. 254, 258, 717 P.2d 535, 537; DeShaw v. Johnson (1970), 155 Mont. 355, 259, 472 P.2d 298, 301. The right to indemnity does not accrue until the payment is made. St. Paul Fire and Marine Insurance Company v. Thompson (1969), 152 Mont. 396, 403, 451 P.2d 98, 102. The party claiming indemnity need only prove potential liability at the time of making the payment, and that the payment was reasonable. Iowa Mfg. Co. v. Joy Mfg. Co. (1983), 206 Mont. 26, 34, 669 P.2d 1057, 1061. Here, the reasonableness of the compromise settlement was approved by the Workers' Compensation Division. Thus, it is not a defense that because the State Fund did not participate or approve the compromise settlement, that the State Fund is exonerated from its indemnity obligations. Here, EBI had

potential liability, effectuated a reasonable settlement, and if in fact there was a second injury, a right of indemnity exists in favor of EBI.

State Fund also contends that EBI has no standing to bring an indemnity claim. It points to § 39-71-601(1), MCA, which reads as follows:

> In case of personal injury or death, all claims shall be forever barred unless presented in writing to the employer, the insurer, or the division, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf.

State Fund contends that the indemnity claim is not brought by the claimant or by someone legally authorized to act for him in his behalf, and further contends that the petition for compromise settlement was not executed until June of 1988 and not approved until August of 1988 and that therefore the one year statute of limitations applies. The contention is weightless. EBI is not bringing a claim on behalf of the claimant, but rather on its own behalf, contending that it has an indemnity right for a payment which State Fund should have made. Section 39-71-601(1), MCA, does not apply in this case.

Finally, State Fund contends that there is no genuine issue of material fact in this case and that a second injury cannot be found from the testimony of the doctors through deposition or by the affidavits presented. Our examination of those documents and testimonies indicates that there is such a genuine issue which must be resolved by a trier of fact, in this case, the Workers' Compensation Court.

The summary judgment of the Workers' Compensation Court of this case is reversed and the cause remanded. The Workers' Compensation Court is instructed to determine

8

whether Claude Athey had reached the condition of maximum healing following his injury of September 19, 1985, prior to his second injury, and whether in fact a second injury occurred. A resolution of those fact issues will determine whether EBI is entitled to indemnity.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9