No. 92-010

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

DOUGLAS R. LAPP,

Claimant and Respondent,

-vs-

W. R. GRACE/BOMAC DRILLING,

Employer and Respondent,

and

TRANSPORTATION INSURANCE COMPANY,

Defendant and Appellant.

FILED

AUG 20 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Thomas R. Bostock, Warden, Christiansen, Johnson &
                Berg, Kalispell, Montana

        For Respondent:

                Marvin L. Howe, Simonton, Howe & Schneider,
                Glendive, Montana


                                Submitted on Briefs:  April 2, 1992

                                Decided:  August 20, 1992

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Transportation Insurance Company appeals from the judgment of the Workers' Compensation Court which determined that claimant's 1990 medical treatment and surgery was causally related to his 1979 industrial injury, and held defendant liable for medical costs and expenses. We affirm the Workers' Compensation Court.

The sole issue raised by the insurer on appeal is whether the Workers' Compensation Court erred in its determination that claimant's medical treatment and surgery in 1990 was not a new injury and was causally related to his injury of 1979.

On October 4, 1979, Douglas R. Lapp was injured when he was struck from behind by a cable while working as a floor hand on a drilling rig. The cable struck the claimant's upper back, shoulder, and neck. He was taken to the hospital in Miles City, where a contusion and whip injury across his back were diagnosed. Claimant was again examined in Billings on November 6, 1979. He complained of shoulder pain, neck pain, headache, and some lateral discomfort down his arm with occasional numbness. The treating physician diagnosed the shoulder problem as post-traumatic suprascapular nerve entrapment.

Claimant was examined by an orthopedic surgeon on December 12, 1979, who concluded that he had carpal tunnel syndrome of the left hand. Claimant underwent surgery on December 14, 1979, which relieved all symptoms of numbness in the hand. However, during follow-up visits in January and February, 1980, he complained of

2

pain in his shoulder, and was treated with anti-inflammatory medication. Claimant was released to work without limitation on May 15, 1980.

Claimant was examined again on January 2, 1981, after complaints of severe pain in his back and neck with radiation into his left arm and leg. Cervical and lumbar myelograms were performed, but the results were inconclusive. No physical cause for claimant's symptoms was discovered during further exams in March and May 1981.

In May 1981, claimant was requested by defendant to submit to a medical panel evaluation. The panel found no abnormalities in the x-ray films of claimant's cervical spine. The panel concluded that claimant was capable of working and that he had zero permanent partial impairment as a result of his 1979 injury.

On October 21, 1985, claimant received two treatments from a Billings chiropractor for a flare-up of neck and back pain. He next sought medical treatment in May 1987 in response to acute left arm numbness and pain radiating into his left leg. X-ray films did not detect any abnormality of the cervical spine.

On October 26, 1988, the claimant was taken by ambulance to the Glendive Community Hospital after having collapsed. Claimant complained of headaches in the month proceeding his collapse. Hypoglycemia, with subsequent anxiety reaction, were blamed for his problems, and he was released the following day.

On April 18, 1990, claimant was seen at the Billings Clinic for neck pain, which continued down his entire left arm. He

described his injury of October 4, 1979, and stated that it had caused him pain and discomfort since that time. X-ray films taken of his cervical spine indicated the existence of bone spurring at the C5-6 level. His diagnosis was cervical radiculitis. He was admitted to the St. Vincent's Hospital in Billings on April 22, 1990, and a magnetic resonance imaging examination (MRI) was performed, which demonstrated a posterior disc protrusion at the C5-6 level. On April 25, 1990, claimant underwent an anterior disc excision and fusion.

Claimant sought compensation from defendant, maintaining that his 1990 medical condition was causally related to his 1979 industrial accident. Defendant, by letter dated July 18, 1990, denied responsibility for both disability payments and medical expenses.

The parties thereafter submitted the issue of entitlement to medical benefits to the Workers' Compensation Court on briefs, deferring the issue of disability benefits. The Workers' Compensation Court adopted the findings of the hearing examiner, finding the defendant liable for claimant's medical benefits. From this ruling, the defendant appeals.

At the time of the 1979 accident, the applicable statute in effect, § 39-71-704, MCA (1979), provided:

> Payment of medical, hospital, and related services.
> In addition to the compensation provided by this chapter and as an additional benefit separate and apart from compensation, the following shall be furnished:
>
> (1) After the happening of the injury, the employer or insurer shall furnish, without limitation as to length

4

of time or dollar amount, reasonable services by a physician or surgeon, reasonable hospital services and medicines when needed, and such other treatment as may be approved by the division for the injuries sustained.

Defendant maintains that claimant attained maximum medical healing in 1981, that various work-related activities between 1981 and 1990 aggravated his preexisting condition, and that this aggravation constituted a new injury. Claimant worked a number of jobs during that time, many of which involved medium-duty lifting.

Post-operative notes demonstrate that claimant experienced problems with his neck since his 1979 oil field injury. Dr. Johnson, the orthopedic surgeon who had treated claimant in 1979 and 1980, testified during his deposition that it was more probable than not that the bulging disc identified in the 1990 MRI exam had been caused by the 1979 injury. This testimony was based upon his treatment of the claimant and available medical records. Furthermore, Dr. Johnson testified that the radiological procedures claimant underwent earlier were inadequate to detect claimant's injury, and thus went undetected until the MRI became available.

There was no evidence that claimant ever alleged a back or neck injury or filed an additional claim between 1981 and 1990. This Court stated in *EBI/Orion Group v. State Fund* (1991), 249 Mont. 449, 452-53, 816 P.2d 1070, 1072:

> Simply stated the *Belton* rule holds that once a claimant has reached maximum healing or a medically stable condition, the insurer at risk is no longer responsible for any subsequent injuries or conditions. See *Belton v. Carlson Transport* (1983), 202 Mont. 384, 389, 658 P.2d 405, 408. As this rule clearly states, in order for EBI to sustain a claim of indemnification against the State Fund

it must establish two elements. First, it must show that Mr. Athey had attained a condition of maximum healing. Second, it must establish that he sustained an injury after he reached maximum healing.

Defendant has offered no evidence that claimant suffered any job-related injury after reaching maximum healing. The evidence presented is that claimant continued to suffer neck pain after his industrial accident in 1979. The fact that a claimant has reached maximum medical healing does not relieve an insurer from future liability for medical and compensatory benefits where there is no new, intervening cause.

The preponderance of the evidence supports the lower court's judgment. Accordingly, that judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

6

August 20, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


THOMAS R. BOSTOCK
Warden, Christiansen, Johnson & Berg
P.O. Box 3038
Kalispell, MT  59903-3038

Marvin L. Howe
SIMONTON, HOWE & SCHNEIDER
P.O. Box 1250
Glendive, MT 59330-1250

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
        Deputy