No. 95-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

LARRY D. CHANEY,

    Petitioner and Appellant,

v.

U.S. FIDELITY & GUARANTY,

    Respondent and Insurer for

OWENS-HURST LUMBER COMPANY,

    Employer,

STATE COMPENSATION INSURANCE FUND,

    Intervenor.

FILED

MAY 30 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court of the State of Montana
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Randall O. Skorheim, Skorheim Law Office,
        Great Falls, Montana

        Robert C. Melcher, Attorney at Law,
        Billings, Montana

    For Respondent:

        Paul C. Meismer, Garlington, Lohn &
        Robinson, Missoula, Montana

    For Intervenor:

        Charles G. Adams, Legal Counsel, State
        Compensation Insurance Fund, Helena, Montana

Submitted on Briefs: February 29, 1996

Decided: May 30, 1996

Filed:

_____
           Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The petitioner, Larry D. Chaney, filed a petition in the Workers' Compensation Court of the State of Montana in which he sought benefits for disability which he alleged was caused by an injury that occurred in the course and scope of his employment with Owens-Hurst Lumber Company in 1983. United States Fidelity & Guaranty, Owens-Hurst's insurer, denied all liability. The State Compensation Insurance Fund, which had paid benefits to Chaney, intervened and sought indemnification from USF&G. After a trial, the Workers' Compensation Court entered an order and judgment in which it denied Chaney's and the Fund's claims. Both Chaney and the Fund appeal the order and judgment. We reverse the order and judgment of the Workers' Compensation Court.

We restate the issues on appeal as follows:

1. Did the Workers' Compensation Court err when it concluded that Chaney was not entitled to benefits?

2. Did the Workers' Compensation Court err when it concluded that the State Fund was not entitled to indemnification from USF&G?

3. Is Chaney entitled to attorney fees and costs?

### FACTUAL BACKGROUND

Petitioner Larry Chaney suffers from carpal tunnel syndrome (CTS). He alleges that his CTS, which required surgery in 1992, was caused by a November 3, 1983, injury he suffered while working on the green chain at Owens-Hurst Lumber Company which was insured at that time by United States Fidelity & Guaranty (USF&G). Chaney

2

alleges that while working on the green chain, he slipped on ice, fell from the green chain platform, and broke his fall with his forearms and wrists. He alleges that his injury was caused by either that incident or the repetitive gripping and lifting activity involved in his work.

On November 11, 1983, Chaney filed a claim for workers' compensation. The Employer's First Report, which was signed by claimant, describes the accident as follows:

> Arms and [h]ands started to go to sleep and get num [sic] while working and after work. Stacking 2 x 6's and Tye's [sic].

Chaney did not specifically mention the fall in the First Report, but he did note the date of the fall and testified that he reported the fall to Owens' office. Chaney also listed his "arm, wrist, hand and fingers" as the parts of the body affected. Chaney's treatment immediately after the alleged injury in 1983 consisted of two visits to Dr. Forest F. Schroeder who diagnosed Chaney's injury as "Myalgia and tendon/ligaments strains secondary to archaic working conditions and long shifts". Chaney continued to work for Owens after his injury until Owens laid him off in late December 1983.

Scott Hall, a claims supervisor with USF&G, testified that no payment was made by USF&G to Chaney. When asked whether USF&G ever accepted the claim, Hall replied, "I have no records at all. I see nothing to indicate that it was accepted." When asked whether

3

anything in his file indicated that the claim was denied, Hall replied, "No, I do not."

In 1989 Chaney again consulted a physician and complained of paresthesia of his thigh, left hand, forearm, and right finger. That physician referred Chaney to Dr. John Stephens who performed nerve conduction tests on Chaney. Dr. Stephens interpreted those tests as suggestive of bilateral CTS.

On September 17, 1991, Chaney reported hand numbness to Dr. Michael Nolan who then referred Chaney to a surgeon, Dr. Stuart Reynolds, who referred Chaney to Dr. Patrick J. Cahill for nerve conduction studies. Dr. Cahill found that Chaney had mild CTS and Dr. Reynolds then returned Chaney to Dr. Nolan's care. Chaney did not complain about CTS symptoms again until September 1992. In October 1992, he returned to Dr. Reynolds who again asked Dr. Cahill to perform nerve conduction studies. Dr. Cahill reported that the study showed evidence of moderately severe CTS and suggested surgery, which Dr. Reynolds performed in 1992.

Chaney quit his work as a mechanic for Olson Ford on November 17, 1992, to have the CTS surgery performed on his right wrist and has not worked since that time. In December 1992, he had the surgery performed on his left wrist. Since his surgery, the Fund, which insured Olson Ford, has paid Chaney temporary total and medical benefits while reserving rights and defenses against Chaney and USF&G.

4

On November 9, 1993, Chaney petitioned the Workers' Compensation Court for a determination that USF&G is liable for temporary total, permanent total, permanent partial, rehabilitation and medical benefits, as well as attorney fees, and a penalty. The Fund intervened and sought indemnification for compensation and medical benefits it has paid Chaney since 1993.

After a trial, the Workers' Compensation Court concluded that Chaney was not entitled to benefits from USF&G because his 1983 injury did not proximately cause his permanent damage. The court based its conclusion on its findings that Chaney suffered no acute injury due to a fall and that, in fact, the fall did not occur; that he did not have consistent symptoms since 1983; that his accounts of his symptoms since 1983 were contradictory; and that "[d]uring those years he engaged in provocative activities at various times" and "[i]t appears likely that claimant's CTS developed over a period of several years." The court also concluded that the Fund was not entitled to indemnification from USF&G for the benefits it paid to Chaney and that Chaney was not entitled to attorney fees, costs or a penalty.

## ISSUE 1

Did the Workers' Compensation Court err when it concluded that Chaney was not entitled to benefits?

We review the Workers' Compensation Court's conclusions of law to determine whether they are correct. *CNA Ins. Cos. v. Dunn* (1995), 273

5

Mont. 295, 298, 902 P.2d 1014, 1016; *Stordalen v. Ricci's Food Farm* (1993), 261 Mont. 256, 258, 862 P.2d 393, 394.

In its order, the Workers' Compensation Court found that "[l]acking any evidence that the claim was timely denied, the Court finds that the claim was accepted by USF&G." The court then concluded that Chaney was not entitled to benefits from USF&G because his 1983 injury did not proximately cause permanent damage. Therefore, the court, without finding a subsequent intervening injury, concluded that USF&G's failure to deny Chaney's claim within thirty days did not preclude it from denying liability for Chaney's present disability. This conclusion is inconsistent with both statutory and case law.

Section 39-71-606(1), MCA (1983), provides:

> Every insurer . . . shall, within 30 days of receipt of a claim for compensation, either accept or deny the claim, and if denied shall inform the claimant and the department in writing of such denial.

An insurance carrier's failure to comply with § 39-71-606(1), MCA, and either accept or deny a claim within thirty days constitutes an acceptance of the claim as a matter of law. *Haag v. Montana School Group Ins. Auth.* (Mont. 1995), 906 P.2d 693, 52 St. Rep. 1146.

Here, in accordance with our decision in *Haag*, the Workers' Compensation Court found that USF&G accepted liability because it failed to timely accept or deny the claim; however, the court then went on to find that no fall occurred and that "[m]ore probably he [Chaney] experienced a gradual onset of numbness in his hands, arms

6

and shoulders due to the repetitive nature of his work on the green chain." Finally, the court concluded that Chaney's 1983 injury (which, based on the only medical evidence offered, was consistent with CTS) did not cause his current CTS condition and need for surgery and that he was not entitled to benefits from USF&G. Before reaching its ultimate conclusion, the court found neither an intervening accident nor a point of maximum healing. The court's jump from USF&G's acceptance of liability, which is not contested by USF&G on appeal, to the lack of causation and the ultimate denial of benefits to Chaney is contrary to our decisions in *Haag* and *Walker v. United Parcel Serv.* (1993), 262 Mont. 450, 865 P.2d 1113.

In *Haag*, where we held that the failure to accept or deny a claim pursuant to statute is deemed an acceptance of the claim, the employer contended that the claimant did not sustain an injury caused by an accident as the statute requires. *Haag*, 906 P.2d at 695. The insurer did not timely deny the claim, but instead denied the claim more than two months after receiving it. *Haag*, 906 P.2d at 696. The Workers' Compensation Court concluded that the claimant was not injured in a work-related accident and, on that basis, denied him benefits. *Haag*, 906 P.2d at 694. We reversed the court and held that the insurer's failure to accept or deny the claim as required by § 39-71-606(1), MCA, is deemed an acceptance of the claim. *Haag*, 906 P.2d at 697. Because of the automatic acceptance of a claim, causation issues were irrelevant.

7

Likewise in this case, to qualify for benefits Chaney initially needed to prove by a preponderance of the evidence that he sustained a compensable injury, § 39-71-119, MCA; *Gerlach v. Champion Int'l* (1992), 254 Mont. 137, 140, 836 P.2d 35, 37, and that a causal connection existed between his injury and his current condition. *Brown v. Ament* (1988), 231 Mont. 158, 162-63, 752 P.2d 171, 174. Chaney showed that his original injury was the same kind of injury to the same parts of his body for which he now seeks benefits and that USF&G failed to either accept or deny his claim within thirty days. Once a claimant shows a failure to timely accept or deny the claim, his initial burden of proof is satisfied. *See generally Haag*, 906 P.2d 693.

Because Chaney's claim was accepted and his initial burden of proof satisfied, the burden of proof shifted to USF&G to show that other injuries caused the extent of his current condition. *Walker v. United Parcel Serv.* (1993), 262 Mont. 450, 456, 865 P.2d 1113, 1117. To avoid further liability, USF&G was required to show that Chaney had attained a condition of maximum healing and that Chaney sustained an injury after he reached maximum healing. *See Caekaert v. State Comp. Mut. Ins. Fund* (1994), 268 Mont. 105, 115, 885 P.2d 495, 500-01; *Lapp v. W.R. Grace/Bomac Drilling* (1992), 254 Mont. 237, 240, 836 P.2d 602, 604; *EBI/Orion Group v. State Comp. Mut. Ins. Fund* (1991), 249 Mont. 449, 452-53, 816 P.2d 1070, 1072; *Belton v. Hartford Accident & Indem. Co.*

8

(1983), 202 Mont. 384, 392, 658 P.2d 405, 409-10. USF&G made no effort to meet its burden.

At trial, USF&G offered no evidence that claimant reached maximum healing following his 1983 injury or that he suffered any subsequent injury. USF&G presented no competent medical evidence to suggest another cause for Chaney's CTS other than the incident in 1983. Moreover, the Workers' Compensation Court specifically found that no date for maximum healing could be established and failed to find that any other injury caused Chaney's CTS. The court did list under other injuries that claimant cut a tendon of his left hand, suffered a back injury, cut his foot, and suffered a strain of his arm and neck after 1983, but it did not find any causal connection between any post-1983 injury and Chaney's current condition. Therefore, USF&G has not met its burden pursuant to *Walker v. United Parcel Serv.*

For these reasons, we conclude that USF&G accepted the claim when it failed to timely deny it, and after accepting the claim, it failed to meet its burden to prove maximum healing and an intervening event. Therefore, the Workers' Compensation Court erred when it denied Chaney benefits from USF&G and concluded that his 1983 injury did not proximately cause his current condition.

ISSUE 2

Did the Workers' Compensation Court err when it concluded that the State Fund was not entitled to indemnification from USF&G?

9

We have recognized a workers' compensation insurer's right to recover benefits that should have been paid by another carrier. For example, in *EBI/Orion Group v. State Comp. Ins. Fund* (1989), 240 Mont. 99, 104, 782 P.2d 1276, 1279, we stated that "[t]he right of indemnity is that where one is compelled to pay money which, in justice, another ought to pay, the former may receive from the latter the sum so paid." We have also stated:

> If it is later determined that the insurance company on risk at the time of the accident should not pay the benefits, this insurance company, of course, has a right to seek indemnity from the insurance company responsible for the benefits already paid out to the claimant.

*Belton v. Hartford Accident & Indem. Co.* (1983), 202 Mont. 384, 392, 658 P.2d 405, 409-10.

The Fund is a subsequent workers' compensation insurer. It insured Olson Ford at the time Chaney filed his 1992 claim and has paid Chaney temporary total benefits as well as medical benefits pertaining to Chaney's wrist and hand problems. As discussed above, we have held that to shift responsibility to a subsequent insurer, a prior insurer must show that the claimant suffered an injury during subsequent employment after he or she reached maximum healing from the initial injury. *O'Brien v. Central Feeds* (1990), 241 Mont. 267, 272, 786 P.2d 1169, 1172; *Belton*, 202 Mont. at 392, 658 P.2d at 409-10. USF&G failed to present evidence that Chaney suffered an injury during subsequent employment after he reached maximum healing from the 1983 injury. Therefore, we conclude that the Fund is entitled to indemnification from USF&G for all compensation and medical benefits paid to Chaney by the Fund.

10

ISSUE 3

Is Chaney entitled to attorney fees and costs?

Chaney contends that he is entitled to reasonable attorney fees and costs pursuant to § 39-71-611, MCA (1983), which provides:

> In the event an insurer denies liability for a claim for compensation . . . and the claim is later adjudged compensable by the workers' compensation judge or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the workers' compensation judge.

In this case, Owens' insurer, USF&G, denied liability for benefits which have now been adjudged compensable. Therefore, we conclude that Chaney is entitled to attorney fees and costs and we remand to the Workers' Compensation Court for a determination of reasonable attorney fees and costs.

For these reasons, we reverse the order and judgment of the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11