No. 97-012

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 5


RAYMOND KUNTZ,

Plaintiff and Appellant,

v.

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

Respondent/Insurer for

CEREAL FOOD PROCESSORS, INC.,

Employer.


APPEAL FROM:   Workersþ Compensation Court
The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James G. Edmiston, III, The Law Firm of Edmiston & Schermerhorn,
Billings, Montana

For Respondent:

Peter J. Stockstad, Garlington, Lohn & Robinson, Missoula, Montana


Submitted on Briefs: August 7, 1997

Decided:   January 13, 1998
Filed:


_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


¶1   Raymond Kuntz appeals from the Workers' Compensation Court's denial of  his claim for permanent partial disability benefits for a January 1987 industrial injury.  We affirm.

¶2    The issues are:

¶3    1.   Whether substantial credible evidence supports the Workers' Compensation Court's  finding that Kuntz does not have a permanent partial disability caused by his January 1987 back injury.

¶4    2.   Whether the court's conclusion is correct that Kuntz failed to prove by a preponderance of the evidence that his January 1987 injury caused his current disability.

¶5    Raymond Kuntz worked at a flour mill in Billings, Montana, for over twenty years,  most of that time as an assistant miller.  The assistant miller monitors and adjusts milling machinery during the milling process, performs routine maintenance on machinery, collects and tests flour samples, puts in additives, and clears ducts of "chokeups."  While he worked at the flour mill, Kuntz earned a degree in business administration.  Although he applied for several management positions at the mill after obtaining his degree, his attempts to move into a management position were unsuccessful.

¶6    The mill was owned by Cereal Food Processors from 1984 through Kuntz's termination from employment there in 1994.  Nationwide Mutual Fire Insurance Company was Cereal Food Processor's workers' compensation insurer for employees at the flour mill.

¶7    Over the years, Kuntz sustained a number of injuries to his back, some work-related and others non-work related.  His initial back injury occurred in 1974 and was diagnosed as a herniated disk at L5-S1.  Kuntz reinjured his back in 1977, 1980, and 1981.  Of these, the 1981 injury was the worst, requiring him to be hospitalized for a week.  That injury was diagnosed as a herniated nucleus pulposus on the right.

¶8    In the fall of 1982, Kuntz suffered a non-work related recurrence of low back pain after dragging an antelope while hunting.  Dr. Peter Teal, who began treating Kuntz at that time, diagnosed Kuntz as having a herniated disc at L5-S1 on the right side.

¶9    In the incident at issue in this case, Kuntz injured his low back at work on January 20, 1987, when he tried to catch a 100-pound sack of flour that slipped from a stack which he was taking up the "manlift" (the open elevator in the flour mill).  Kuntz reported left leg pain to his supervisor and missed two weeks of work as a result of this injury.  He went to a hospital emergency room a few weeks later complaining of left leg pain.  He was not hospitalized, however, and he did not consult his treating physician, Dr. Teal, until nearly two months later.  As of that time, March 1987, Dr. Teal did not note any ongoing leg pain, nor did he think further treatment was indicated.

¶10   Kuntz was again reinjured at work in November 1988, while pulling a lever.  He sought treatment from Dr. Teal two weeks later, at which time Dr. Teal noted that Kuntz had reinjured his back at work "and developed aching pain mostly in the left calf."  Dr. Teal stated in his deposition that Kuntz had reached maximum healing from his 1987 injury before the 1988 injury.  Kuntz sought treatment for periodic left leg pain following the November 1988 injury, once in 1989, twice in 1990, and once in 1991.  Kuntz did not seek medical care for his back again until November 1994.

¶11   In 1993, Kuntz began suffering from severe anxiety and depression.  He obtained mental health counseling, during which he was advised to stop working the rotating shifts which he was required to work as an assistant miller.  Kuntz applied for a transfer to a day shift job at the flour mill, but he did not get the position for which he applied.  The flour mill then offered Kuntz another day shift position, in an entry-level job which required heavy lifting.  Kuntz obtained a letter from Dr. Teal stating that such a job would be inadvisable due to his back condition.  The mill subsequently advised Kuntz not to report back to work because it did not have a suitable day shift job available for him.

¶12   In this proceeding, Kuntz asserts that his 1987 back injury precludes him from physically performing the assistant miller job at the flour mill.  He seeks permanent partial disability benefits under §§ 39-71-705 through -708, MCA (1985), based upon his possible prospective future loss of earning capacity.

¶13   Before the hearing was held on the present claim, Kuntz settled with the insurer for his work-related injuries in 1977, 1980, and 1981.  At the time of the hearing on this claim, he also had claims pending for work-related injuries in 1974 and 1988.

¶14   At the hearing, Kuntz offered Dr. Teal's deposition testimony.  Nationwide presented live testimony by Dr. William Shaw, a specialist in occupational medicine who conducted an independent medical examination of Kuntz in January 1996.  Then, and at the time of trial, Kuntz was working as a custodian for the Billings public schools at about half his annual earnings at the flour mill.  Kuntz testified in person at the hearing before the Workers' Compensation Court, as did two vocational experts, five of Kuntz's co-workers and a supervisor at the flour mill, and Kuntz's custodial supervisor at the schools.

Issue 1

¶15   Does substantial credible evidence support the Workers' Compensation Court's finding that Kuntz does not have a permanent partial disability caused by his January 1987 back injury?

¶16   This Court reviews findings of fact made by the Workers' Compensation Court to determine whether they are supported by substantial credible evidence.  Kloepfer v. Lumbermen's Mut. Cas. Co. (1996), 276 Mont. 495, 497, 916 P.2d 1310, 1311.  The finding which Kuntz here disputes was that his 1987 injury "was not material or significant on a permanent basis and did not increase his disability over what existed prior to the injury."

¶17   Kuntz asserts that the Workers' Compensation Court erred in essentially determining that his right leg and low back pain "belonged to" the early 1980 injuries, but only the left leg pain "belonged to" the January 1987 injury.  He further contends that the Workers' Compensation Court improperly concluded that because his left leg pain decreased after 1991, the effects of the 1987 injury were completely gone.  Instead, he maintains, the court should have found that his January 1987 injury was an aggravation of a previous condition and that under Belton v. Carlson Transport (1983), 202 Mont. 384, 658 P.2d 405, the risk for the entire condition passed to Nationwide as the insurer for Cereal Food.

¶18   The issue in Belton was whether the healing period from a previous injury ended

for purposes of workers' compensation only when the injured worker was "completely healed." This Court clarified that the insurer at the time of a second injury is at risk for the injury if the previous injury covered by another insurer has reached maximum healing, maximum recovery, or a medically stable condition; complete recovery from the previous injury is not necessary for the second insurer to be responsible. Belton, 202 Mont. at 389-90, 658 P.2d at 407-08. The burden of proof is on the insurer at the time of the second injury.

¶19  A limitation not at issue in Belton, but clearly set forth therein, is that the second injury must be "an aggravation of a pre-existing injury." Belton, 202 Mont. at 391, 658 P.2d at 409. In the present case, although Dr. Teal opined by deposition that Kuntz's 1987 injury was either a "new injury" or an "aggravation of a previous condition," and that Kuntz's injuries of 1977, 1980, and 1981 had reached maximum healing before 1987, Dr. Shaw testified that the 1987 injury did not aggravate or materially change Kuntz's underlying condition. In Dr. Shaw's opinion, the 1987 incident represented an exacerbation, or temporary alteration in symptoms, but not an aggravation, or material and permanent alteration, in Kuntz's condition.

¶20  Kuntz further alleges that the Workers' Compensation Court ignored the legal principle set forth in Tiedeman v. Cooper Logging, Inc. (1985), 218 Mont. 312, 708 P.2d 255, that "each new compensable injury, though successive, begins a new benefit consideration beginning at zero." Tiedeman, 218 Mont. at 316, 708 P.2d at 257. Kuntz maintains that the rule established in Tiedeman applies here.

¶21  The rule from Tiedeman applies as to "each new compensable injury." Here, the Workers' Compensation Court found that Kuntz did not suffer a permanent aggravation of his pre-existing back injury, and that therefore the 1987 injury was not compensable. If that finding is supported by substantial credible evidence, then the rule from Tiedeman does not apply. Thus, both Belton and Tiedeman bring us back to the issue stated above: whether substantial credible evidence supports the finding that Kuntz does not have a permanent partial disability caused by his 1987 injury.

¶22  The Workers' Compensation Court found that this case turned, in large part, on Kuntz's credibility. The court did not find wholly credible Kuntz's testimony concerning the nature and extent of his pain or the nature and extent of his disability, finding that Kuntz "is an extremely angry man driven by a desire for revenge against his former employer, and that his testimony concerning the demands of his time-of-injury job, the extent of his pain, and his ability to perform his time-of-injury job was exaggerated." ô23  The record supports the court's determination as to Kuntz's credibility. For example, during his deposition, Kuntz was asked if he had returned to the point where he was having some periodic low-back pain and leg pain, "the same as you've had ever since 1974?" Kuntz answered, "That's correct." The court heard testimony from Kuntz's co-workers at the flour mill and from one of the vocational experts concerning the physical demands of the assistant miller job. Their testimony indicated that the pace and labor required for the job were not nearly as intensive as described by Kuntz. When asked if Kuntz complained about back pain at work, several of his mill co-workers responded that he did, but that "he complained about everything." When Kuntz stopped working as an assistant miller in 1994, it was due to his depression, not his back injuries.

¶24  When he was examined by Dr. Shaw, Kuntz was pursuing benefits for his 1977, 1980, and 1981 injuries, having not yet settled those claims. Kuntz did not even report his 1987  injury to Dr. Shaw.

¶25 When Kuntz applied for work with the Billings school district, he represented that he had no physical handicap or deficit that precluded him from performing certain work, and wrote, "My back has not given me any trouble for a long time." At the time of the hearing, he had applied for an upgraded custodial position with the school district which would involve heavier duties, including the moving of desks and file cabinets. Based upon all the information presented, the court concluded that Kuntz's claims about his disability were exaggerated.

¶26 Additionally, the evidence that Kuntz's 1987 injury caused his current disability was, at best, equivocal. As the Workers' Compensation Court noted, it was after the 1988 injury, not the 1987 injury, that Dr. Teal noted that Kuntz had "developed aching pain mostly in the left calf." Dr. Teal reported after his March 3, 1987 examination of Kuntz that Kuntz "has improved now and in fact he is back to his usual status of some chronic aching low back pain." Dr. Teal's opinion that Kuntz could not perform the job of assistant miller was based on Kuntz's reports of the nature and extent of his pain, the nature and extent of his disability, and the requirements of the job. Unlike Dr. Shaw, Dr. Teal did not go to the flour mill and observe the assistant miller job.

¶27 Section 39-71-116(12), MCA (1985), defines permanent partial disability as a "condition resulting from injury" (emphasis added) which results in loss of earnings or earning capability. Dr. Teal assigned Kuntz a ten percent impairment rating, but he was not able to attribute that impairment rating to Kuntz's 1987 injury. In fact, in the pretrial order, Kuntz stipulated that Dr. Teal's impairment rating is attributable to his 1981 injury.

¶28 Dr. Shaw went to the flour mill on two occasions to evaluate the physical demands of the assistant miller job. Based upon those visits to the mill, his review of Kuntz's medical records, his physical examination of Kuntz, and the detailed history which Kuntz provided, Dr. Shaw opined to a reasonable degree of medical certainty that Kuntz was not physically precluded from working as an assistant miller due to his back problems. He further concluded that Kuntz quit work at the mill because of his depression rather than because of problems with his lower back.

¶29 Dr. Shaw noted that Kuntz had a twenty-year history of mechanical low back pain and sciatica. He testified that Kuntz's report of variations in pain since his 1974 injury "is really very typical of this chronic, recurrent, mechanical low back syndrome." As to Kuntz's claim that before his 1987 injury he had only experienced right leg pain and not left leg pain, Dr. Shaw testified that, "to me, as an examining physician, the fact that one time the pain is on the right, the other time the pain is on the left, is not so significant to me that there has been a measurable alteration of his underlying status." Dr. Shaw opined that Kuntz suffered a physical impairment, but he could not to a reasonable degree of medical certainty attribute the impairment to Kuntz's 1987 injury.

¶30 After reviewing the record in this case, we hold that substantial credible evidence supports the Workers' Compensation Court's finding that Kuntz does not have a permanent partial disability caused by his January 1987 back injury.

                              Issue 2

¶31 Is the court's conclusion correct that Kuntz failed to prove by a preponderance of the evidence that his January 1987 injury caused his current disability?

¶32 The Workers' Compensation Court concluded that "[t]he evidence preponderates in favor of a conclusion that claimant's overall condition was not materially, permanently changed by the 1987 injury, and that his disability was not increased by the injury." Kuntz argues that the court erred in accepting the testimony of Dr. Shaw over the testimony of Dr. Teal, his treating physician for fourteen years.

¶33 We review the Workers' Compensation Court's conclusions of law to determine whether that court's interpretation of the law is correct. Kloepfer, 276 Mont. at 497-98, 916 P.2d at 1311. This Court has recently rejected the argument that a treating physician's opinion is conclusive in workersþ compensation matters:

> Nevertheless, a treating physician's opinion is not conclusive. To presume otherwise would quash the role of the fact finder in questions of an alleged injury. The Workers' Compensation Court, as the finder of fact, is in the best position to assess witnesses' credibility and testimony.

Kloepfer, 276 Mont. at 498, 916 P.2d at 1312. This is especially true, where, as here, the testimony of the treating physician was equivocal and was based in large part upon subjective reports of a non-credible claimant, while the conflicting testimony of the independent medical examiner was unequivocal.

¶34 As to the deposition testimony of Dr. Teal, this Court has the same opportunity to review that evidence as did the Workers' Compensation Court. See Smith-Carter v. Amoco Oil Co. (1991), 248 Mont. 505, 813 P.2d 405. As to that testimony, we agree with the Workers' Compensation Court in that the testimony was equivocal and was based in large part upon Kuntz's subjective representations of his condition and of his job duties.

¶35 As to the testimony of the witnesses who appeared live before the Workers' Compensation Court, this Court must defer to the trial court's assessment of the testimony of those witnesses. See, e.g., Walls v. Travelers Indem. Co. (Mont. 1997), 931 P.2d 712, 716, 54 St.Rep. 82, 84. We again point out, as noted above, that Dr. Shaw's opinion was based upon more than his physical examination of Kuntz. It was also based upon his two visits to the flour mill to assess the job requirements of an assistant miller, his review of Kuntz's medical records, and the detailed history which Kuntz provided to him.

¶36 In his reply brief, Kuntz argues for the first time that two cases previously decided by this Court, Chaney v. U.S. Fidelity & Guar. (1996), 276 Mont. 513, 917 P.2d 912, and Walker v. United Parcel Service (1993), 262 Mont. 450, 865 P.2d 1113, control the result in the present case. Walker is cited in the Respondents' brief, but Chaney is not.

¶37 Both Chaney and Walker recognize that the claimant bears the initial burden of establishing that he suffered a compensable injury from an industrial accident. Chaney, 276 Mont. at 518, 917 P.2d at 915; Walker, 262 Mont. at 454, 865 P.2d at 1116. As discussed above, Kuntz has failed to meet his initial burden of establishing that he suffered permanent detriment on account of his 1987 injury. Therefore, the burden does not shift to the insurer as described under Chaney and Walker.

¶38 We hold that the Workers' Compensation Court was correct in concluding that the preponderance of the evidence indicated that Kuntz's 1987 injury was not the cause of

any permanent disability from which he suffers.

¶39  Affirmed.

                              /S/   WILLIAM E. HUNT, SR.


We Concur:

/S/   KARLA M. GRAY
/S/   JIM REGNIER
/S/   TERRY N. TRIEWEILER
/S/   W. WILLIAM LEAPHART