No. 96-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997



EBI/ORION GROUP (Connecticut Indemnity),

Petitioner and Respondent,

v.

MICHAEL S. BLYTHE,

Respondent and Appellant.



APPEAL FROM:    Workers' Compensation Court, State of Montana,
The Honorable Mike McCarter, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

Richard R. Buley; Tipp & Buley, Missoula, Montana


For Respondent:

Charles E. McNeil; Garlington, Lohn & Robinson,
Missoula, Montana



Submitted on Briefs:   November 21, 1996

Decided: January 7, 1997

Filed:

_____

Clerk


Justice W. William Leaphart delivered the Opinion of the Court.


EBI/Orion is a workers' compensation insurer which insured Community Medical Center (Community) in Missoula. The appellant, Michael S. Blythe (Blythe), worked at Community as a certified respiratory therapy technician. Blythe filed a claim seeking compensation and medical benefits due to alleged mental injuries he suffered while employed at Community. The Workers' Compensation Court found that Blythe was not disabled. We reverse and remand.

Background

On January 29, 1989, Blythe was stuck by a needle in a arterial blood gas kit which had just been used to draw blood from an AIDS infected patient. Since that time, Blythe has not tested positive for the HIV virus and there appears to be no reasonable prospect that he was infected by the needle. Nonetheless, Blythe claimed that he suffered disabling psychosis and depression as a result of the incident. He claimed that he has auditory and visual hallucinations which have affected his ability to concentrate and work. EBI/Orion accepted liability and paid temporary total disability benefits under a reservation of rights. Six years later, in 1995, EBI/Orion filed a petition with the Workers' Compensation Court to determine the extent of Blythe's disability. EBI/Orion argued that Blythe is malingering; that he is faking mental illness in order to obtain monetary compensation on account of the incident.

The issue presented to the Workers' Compensation Court was whether Blythe's symptoms were real or fabricated. The Workers' Compensation Court, based upon the testimony of two clinical psychologists, Dr. Richard Rogers and Dr. David Faust, found that the symptoms were fabricated. The issues presented to this Court are as follows:

1. Should the Workers' Compensation Court have ordered an independent medical examination by a psychologist who is neither a physician nor licensed to practice in the State of Montana?

2. Whether the Workers' Compensation Court's determination that Blythe was feigning his illness is supported by substantial credible evidence.

3. Did the Workers' Compensation Court err in not giving more weight to the treating physician than to the opinions of two psychologists; one of whom had never met Blythe and the other who

had evaluated Blythe only once?

## Standard of Review

We review Workers' Compensation Court's findings of fact to determine whether the findings are supported by substantial credible evidence.  The Court reviews conclusions of law to determine whether the lower court's interpretation of the law is correct.  Kloepfer v. Lumbermen's Mut. Cas. Co. (1996), 276 Mont. 495, 916 P.2d 1310.

## Discussion

We first address the question of whether the Workers' Compensation Court should have ordered an independent medical examination by a psychologist who is neither a physician nor licensed to practice in the State of Montana.

Blythe's treating physician was William Stratford, M.D.  Dr. Stratford is a board certified psychiatrist, a board certified disability consultant and is certified by the American Board of Forensic Examiners.  He is a fellow of the American College of Forensic Psychiatry, a subspecialty which deals with the detection of malingering.  Dr. Stratford first started treating Blythe in October of 1989 soon after the incident and continued seeing him through 1995.

On May 24, 1995, EBI/Orion sent out notice of an independent medical examination (IME) by a Dr. Rogers.  Blythe objected to the notice of IME on the following grounds: (1) the rules of the Workers' Compensation Court contain no provision for an IME; (2) Dr. Rogers was not previously listed as a witness; (3) an IME must be performed by a medical doctor; and (4) any IME would be invalid due to the effect of anti-psychotic medications Blythe was taking.

The Workers' Compensation Court issued an order addressing each of Blythe's objections.  The court determined that there was no evidence to support Blythe's claim that his use of anti-psychotic drugs would prevent a valid examination.  The court then ruled that, although the Workers' Compensation Court may not have a rule allowing IMEs, there is statutory provision for an IME under 39-71-605, MCA.  As to the alleged lack of notice concerning the IME, the court held that the issue had been addressed in a previous scheduling order and that Blythe had received adequate notice.

Blythe's final objection to the IME was that Dr. Rogers was not a physician licensed in the State of Montana.  In addressing this objection, the court held that, although  39-71-605, MCA, refers to an IME by a "physician," other provisions of the Workers' Compensation Act make it clear that the term "physician" is used in a broad sense and does not refer only to medical doctors.  Relying on 1993 statutory definitions, the court noted that the term "treating physician" encompasses not only M.D. physicians but also chiropractors, physician assistants and dentists.  Section 39-71-116(30), MCA (1993).  The court thus held: "I conclude that the legislature intended the word 'physician' to refer generally to

persons with special expertise in the treatment of physical and psychological conditions, including Ph.D. clinical psychologists." After reviewing the law in effect at the time of trial, we hold that the court's ruling on this point of law was in error.

EBI/Orion, relying on Buckman v. Montana Deaconess Hosp. (1986), 224 Mont. 318, 730 P.2d 380, contends that the law in effect at the time of the claimant's injury controls. Thus, EBI/Orion argues that this January 1989 injury is controlled by the 1987 version of  39-71-605, MCA,  which provides for IMEs by "physicians" who have had "adequate and substantial experience in the particular field of medicine concerned with the matters presented by the dispute."  Section 39-71-605(2), MCA (1987). Prior to 1993, a "physician" was defined as being a "'surgeon' and in either case means one authorized by law to practice his profession in this state."  Section 39-71-116(17) MCA (1991).

EBI/Orion's reliance of Buckman and thus the 1987 version of the law, however, is misplaced.  The Buckman rule only applies to substantive rights of a claimant, such as the right to benefits allowed at the time of injury.  Buckman, 730 P.2d at 382 (citation omitted).  We have held that the statutes in effect at the time of trial control when the subject is procedural rather than substantive.  State Compensation Ins. v. Sky Country (1989), 239 Mont. 376, 379, 780 P.2d 1135, 1137.  A rule as to who is qualified to conduct an IME is a procedural rather than a substantive rule. Thus, the law in effect as to IMEs as of the date of the trial is controlling.

The question then becomes whether the 1993 version of  39-71-605, MCA, allows for an IME to be conducted by a clinical psychologist.  Section 39-71-605(2), MCA (1993), provides for an IME by a physician or panel of physicians.  The 1987 specific definition of "physician" was deleted by the legislative amendment in 1993 and replaced with a definition of "treating physician" as follows:

(a) a physician licensed by the state of Montana under Title 37, chapter 3, and has admitting privileges to practice in one or more hospitals, if any, in the area where the physician is located;

(b) a chiropractor licensed by the state of Montana under Title 37, chapter 12;

(c) a physician assistant-certified licensed by the state of Montana under Title 37, chapter 20, if there is not a physician, as defined in subsection 30(a), in the area where the physician assistant-certified is located;

(d) an osteopath licensed by the state of Montana under Title 37, chapter 5; or

(e) a dentist licensed by the state of Montana under Title 37, chapter 4.

Section 39-71-116(30), MCA (1993).

The above definition is broader than the generally accepted definitions of "physician" as being a person lawfully engaged in the practice of medicine. Black's Law Dictionary, 1147 (6th ed. 1990). "The term commonly refers to a doctor of medicine (MD) or a doctor of osteopathy (DO)." The American Medical Association, Encyclopedia of Medicine, 793 (1989). In the absence of a definition of "physician," the Workers' Compensation Court looked to the definition of "treating physician" which encompasses more than medical doctors.

The Workers' Compensation Court, in light of the above definition, concluded that the term "'physician' is to be used in a broad sense and does not refer only to medical doctors." We hold that the court's interpretation is too liberal. Section 39-71-105(4), MCA (1993), provides that "Title 39, chapters 71 and 72, must be construed according to their terms and not liberally in favor of any party." While we agree that "treating physician" is not limited to medical doctors, we do not agree that even that broad definition encompasses Dr. Rogers.

The legislature was very specific in defining which professionals come within the definition of "treating physician." The professionals listed were not listed by way of example. Rather, they were set forth as an exhaustive list. The legislature chose not to include psychologists on this list. The role of the court in interpreting statutory language is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA; Goyen v. City of Troy (1996), 276 Mont. 213, 221, 915 P.2d 824, 829. Furthermore, it must be noted that each of the professionals that are listed in the definition, 39-71-116(30) MCA (1993), must be licensed by the State of Montana. Thus, even if we were to assume, arguendo, that psychologists were encompassed in the list of professionals, we would likewise have to assume that, like the other listed professionals, a psychologist would have to be licensed to practice in the State of Montana. As used in Title 39, Chapter 71, MCA, the term "treating physician" does not encompass the profession of clinical psychology, nor is Dr. Rogers licensed to practice in the State of Montana. Clearly, Dr. Rogers does not qualify as a "physician" ("treating" or otherwise) for purposes of an IME examination.

We hold that the Workers' Compensation Court erred in requiring Blythe to submit to an IME by Dr. Rogers. The court further erred in relying on Dr. Rogers' testimony, which was based upon his examination of Blythe, to conclude that Blythe "has fabricated and feigned mental illness in an attempt to advance his legal claims."

The Testimony of Dr. Faust:

Our holding that IMEs must, by statute, be conducted by "physicians," not psychologists, does not affect the testimony of Dr. Faust. Although Dr. Faust, like Dr. Rogers, is a clinical psychologist, Dr. Faust did not conduct an IME and thus he was not subject to the definition of "physician" as we have interpreted that term in the context of 39-71-605 and -116(30), MCA (1993). Dr. Faust, a professor of psychology from the University of Rhode Island, is a recognized authority on malingering. After reviewing Blythe's psychological tests and listening to Blythe testify at trial, he testified that, in his opinion, Blythe is malingering mental disorders.

In the Workers' Compensation Court, Blythe argued that Dr. Faust did not conduct a face-to-face examination and that his testimony should not carry as much weight as the treating physician, Dr. Stratford. Blythe now argues in his appellate reply brief that since Dr. Faust is not a medical doctor, his testimony is not "medical" evidence under 39-71-702(2), MCA (1987). Blythe cites Kloepfer for the proposition that the Workers' Compensation Court is only to resolve conflicts in "medical" testimony. He argues that in his case there is no conflicting "medical" testimony since the only experts for the insurer were psychologists who are not "medical" doctors; that the treating physician, Dr. Stratford, was the only medical doctor testifying.

Blythe, however, did not object to the testimony of Dr. Faust nor did he ask the court to reconsider its decision which explicitly relies on both the testimony of Dr. Rogers and Dr. Faust. In the absence of any sort of objection to Dr. Faust's testimony, the Workers' Compensation Court had no basis for disregarding the testimony of the psychologist. Since Blythe failed to challenge the testimony of Dr. Faust in the Workers' Compensation Court or ask that court to reconsider its decision, he cannot now raise the issue for the first time on appeal. Guardianship & Conserv. of Estate of Tennant (1986), 220 Mont. 78, 83, 714 P.2d 122, 125. Furthermore, the argument that Dr. Faust and Dr. Rogers did not present "medical" testimony was raised for the first time in Blythe's reply brief. Rule 23(c), M.R.App.P., requires that reply briefs be confined to new matter raised in the respondent's brief. Thus, an appellant is prohibited from raising new issues or theories in a reply brief. Loney v. Milodragovich, Dale & Dye, P.C. (1995), 273 Mont. 506, 512, 905 P.2d 158, 162. For all of the above reasons, we reject Blythe's suggestion that the Workers' Compensation Court erred in considering the testimony of Dr. Faust.

Since the court's conclusion that Blythe was malingering was based partly on testimony to which there was no objection and partly on inadmissible testimony, a question remains as to what the court's findings of fact and conclusions of law would have been absent Dr. Rogers' IME. We will not substitute our judgment for

that of the Workers' Compensation Court as to weight of evidence on questions of fact.  Mennis v. Anderson Steel Supply (1992), 255 Mont. 180, 184, 841 P.2d 528, 530.  Accordingly, we remand this matter to the Workers' Compensation Court for a reweighing of the evidence as to malingering; contrasting the testimony of Blythe's experts, including Dr. Stratford, with the testimony of EBI/Orion's remaining expert, Dr. Faust.

Summary

As to issue number one, we hold that the Workers' Compensation Court should not have ordered an independent medical examination by a psychologist who is neither a physician nor licensed to practice in the State of Montana.  On issue number two, we remand for new findings and conclusions after discounting the IME performed by Dr. Rogers as well as his trial testimony.  In light of the remand on issue number two, we need not address issue number three other than to note that, as a general rule, we have held that the testimony of a treating physician is entitled to greater evidentiary weight.  Pepion v. Blackfeet Tribal Industries (1993), 257 Mont. 485, 489, 850 P.2d 299, 302.  "Nevertheless, a treating physician's opinion is not conclusive.  To presume otherwise would quash the role of the fact finder in questions of an alleged injury."  Kloepfer, 916 P.2d at 1312.

Reversed and remanded for reconsideration consistent with our holding herein.

/S/  W. WILLIAM LEAPHART


We concur:


/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER
/S/  KARLA M. GRAY
/S/  JAMES C. NELSON