No. 97-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 90

EBI/ORION GROUP (Connecticut Indemnity),

Petitioner and Respondent,

v.

MICHAEL S. BLYTHE,

Respondent, Claimant and Appellant.

APPEAL FROM:   The Workers' Compensation Court,
Honorable Mike McCarter, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Richard R. Buley, Tipp and Buley, Missoula, Montana

For Respondents:

Charles E. McNeil, Garlington, Lohn and Robinson, Missoula,
Montana

Steven S. Carey, Carey, Meismer and McKeon, Missoula,
Montana

Submitted on Briefs: February 18, 1998
Decided:  April 28, 1998

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1    Michael S. Blythe appeals from the judgment of the Workers' Compensation Court that he is not disabled and is not entitled to compensation or benefits for his January 1989 industrial accident.  We affirm.

¶2    The issues are:

¶3    1.  Whether the Workers' Compensation Court erred by not giving the most weight to the opinion of the treating physician.

¶4    2.  Whether the court erred in finding that Blythe feigned his illness.

¶5    On January 29, 1989, during his employment as a respiratory therapist, Blythe was stuck with a needle containing blood contaminated with the AIDS virus (HIV) and Hepatitis B.  The uncontroverted medical testimony was that if Blythe had been infected with HIV,  he would have tested positive for the virus within three to six months after the needle stick.  Fortunately, Blythe has consistently tested negative for HIV.

¶6    EBI/Orion Group (EBI) was the insurer for Blythe's employer, Missoula Community Medical Center (the hospital).  Immediately after the needle stick, EBI accepted liability and began paying Blythe temporary total disability benefits under a reservation of rights.  In January 1992, Blythe brought a district court action against the hospital and Radiometer America, Inc., the manufacturer of the needle with which he was stuck.  That case resulted in this Court's decision in Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 866 P.2d 218, that an injury and accident had occurred and that the Workers' Compensation Act provided the exclusive remedy.

¶7    In 1994, EBI petitioned the Workers' Compensation Court to determine whether Blythe suffered any psychological condition caused by the physical injury in the workplace and whether he suffers from a resulting permanent disability.  Blythe counterclaimed, alleging a causal connection and permanent total disability.  He contends that he suffers from a schizoaffective disorder caused by the stress of worrying about contracting AIDS from the needle stick injury.

¶8    After a three-day trial in July 1995, the Workers' Compensation Court entered findings, conclusions, and a judgment that Blythe had fabricated and feigned mental illness and was not disabled.  Blythe appealed.  This Court reversed on grounds that an independent medical examination of Blythe conducted at the request of EBI was performed by a clinical psychologist who was not licensed to practice in Montana and therefore was not authorized to perform an independent medical examination under the applicable statutes. EBI/Orion Group v. Blythe (1997), 281 Mont. 50, 931 P.2d 38 (Blythe I).  We remanded to allow the Workers' Compensation Court to reconsider the evidence without the testimony from that expert witness.

¶9    After reviewing the remaining record, the Workers' Compensation Court again determined that Blythe is not disabled on account of his January 1989 work injury and is not entitled to further benefits from EBI.  Blythe

appeals.

Issue 1

¶10  Did the Workers' Compensation Court err by not giving the most weight to the opinion of the treating physician?

¶11  Dr. William Stratford, a Missoula, Montana board certified psychiatrist, treated Blythe from October of 1989 through the time of trial.  Dr. Stratford diagnosed Blythe as suffering from a schizoaffective disorder or schizoaffective schizophrenia, which he treated with counseling and various psychotropic medications.  At trial, Dr. Stratford testified extensively on Blythe's behalf.  In Dr. Stratford's opinion, Blythe is not malingering mental illness.  Dr. Stratford further opined that Blythe's mental illness was precipitated by the needle stick incident and is totally disabling.

¶12  In remanding this case, this Court stated that the Workers' Compensation Court was to "reweigh[] . . . the evidence as to malingering; contrasting the testimony of Blythe's experts, including Dr. Stratford, with the testimony of EBI/Orion's remaining expert, Dr. Faust."  Blythe I, 281 Mont. at 57, 931 P.2d at 42.  Blythe points out that this Court has often held that, as a general rule, the opinion of a treating physician is accorded greater weight than the opinions of other expert witnesses.  E.g., Blythe I, 281 Mont. at 57, 931 P.2d at 42.  That remains the general rule.

¶13  However, this Court has also held that

      a treating physician's opinion is not conclusive.  To presume
      otherwise would quash the role of the fact finder in questions of
      an alleged injury.  The Workers' Compensation Court, as the
      finder of fact, is in the best position to assess witnesses' credibility and
testimony.

Kloepfer v. Lumbermen's Mut. Cas. Co. (1996), 276 Mont. 495, 498, 916 P.2d 1310, 1312.  It is the function of a finder of fact to weigh the credibility of both non-medical and medical evidence.  See Burns v. Plum Creek Timber Co. (1994), 268 Mont. 82, 885 P.2d 508.

¶14  On remand, the Workers' Compensation Court described its function as not limited to merely reweighing the testimony of Dr. Stratford against that of EBI's remaining expert witness, Dr. Faust.  The court determined that its task also included consideration of Blythe's credibility, since Dr. Stratford's opinions rested largely on what Blythe had told him.  The court reasoned:

      While Dr. Stratford genuinely believed the claimant, his belief
      is not binding on this Court, otherwise the fact-finding function
      vested in the Court would be usurped by a physician whose
      principal duty is to his patient and who does not have the full
      benefit of all of the evidence presented in a courtroom.

We agree.  The District Court's interpretation of the law is consistent with Kloepfer and with longstanding precedent concerning the function of a finder of fact.

¶15　We therefore hold that the Workers' Compensation Court did not err in its weighing of Dr. Stratford's opinion that Blythe was not malingering against the other evidence presented.

Issue 2

¶16　Did the court err in finding that Blythe feigned his illness?

¶17　The court's findings on this matter appeared at the end of its extensive and detailed findings of fact.　The relevant findings were:

92.　Numerous facts support a conclusion that claimant is malingering and untruthful concerning his mental state.　The number and nature of the atypical features of claimant's alleged mental disorder were extraordinary.　The evidence presented to the Court showed that claimant falsely answered psychological tests in a deliberate effort to "fake bad" and that he is knowledgeable concerning psychological matters and capable of fabricating and feigning psychiatric symptoms.　From virtually the moment of the needle stick, he has been intent on pursuing legal action on account of his injury.　His reports to Dr. Stratford concerning his activities were sometimes incomplete or exaggerated.　In the Court's assessment, his explanations at trial were smoothly delivered but often incredible and unbelievable.

93.　After reviewing and carefully considering all of the evidence in this case, I find that claimant's mental illness is malingered.　I further find that he is not suffering from a schizoaffective disorder or any other psychotic diagnosis. While he may well have some depression, that is a life-long problem and a personality characteristic which is not attributable to the industrial accident.

94.　I find that claimant is able to work as a respiratory therapist and that his case for disability was fabricated.

This Court reviews findings of fact by the Workers' Compensation Court to determine whether they are supported by substantial credible evidence.　Best v. State Compensation Ins. Fund (1996), 276 Mont. 302, 306, 916 P.2d 108, 110.

¶18　Blythe testified at trial as to the circumstances of the needle stick and his condition following the incident.　He read from diaries which he had regularly kept since that time, and which were introduced into evidence. Blythe stated that, as a result of the needle stick, he had initially suffered anxiety attacks and depression.　He testified that he later experienced auditory, visual, gustatory, tactile, and olfactory hallucinations.　Blythe continued working at the hospital for approximately two years after the needle stick, but did not return to work after a March 1991 confrontation with his supervisor.

¶19　Blythe also testified as to his educational background, which included bachelors' degrees in psychology and sociology, associate of science and medical science degrees, and two associate of arts degrees.　Blythe's college

credits included the study of mental disorders. At the hearing, he testified that he was working on two liberal arts degrees and had been accepted into graduate school for a guidance and counseling program.

¶20 Dr. Stratford admitted that Blythe's highly irregular scores on the validity scales of two versions of the MMPI personality test indicated a strong possibility that he was faking or malingering. While admitting that it was possible that Blythe was in fact malingering, Dr. Stratford nevertheless explained those scores as a result of Blythe's idiosyncratic way of analyzing matters. He characterized Blythe as a "very unusual character" with "nitpicking qualities."

¶21 EBI presented expert witness Dr. David Faust, a clinical psychologist and professor of psychology at the University of Rhode Island. Dr. Stratford acknowledged that Dr.Faust was a nationally-known expert on neuropsychology. Dr. Faust had reviewed the results of Blythe's psychological tests and other materials and had observed Blythe's trial testimony. In Dr. Faust's view, although Blythe had been "a troubled person for a long period of time," he was not unable to work and did not suffer from a serious schizophrenic-type disorder. Dr. Faust based his opinion not only on Blythe's atypical MMPI validity scores, but also on the atypical symptoms of mental illness presented by Blythe, including late age at onset, delay in onset after the traumatic incident, and the reported combination of types of hallucinations. Dr. Faust also described numerous inconsistencies and implausibilities which he observed in Blythe's statements in the records he reviewed and at trial. Dr. Faust testified that, in his opinion, Blythe was malingering a mental disorder. He commented, in fact, that he had "never seen a case in which the evidence [of malingering] seemed so overwhelming" as in this case.

¶22 Blythe asserts that Dr. Faust violated the standards of his profession by rendering an opinion without having personally conducted an examination of him. Dr. Faust testified as to this matter. He stated that the ethical guides are often ambiguous, as in this instance where two ethical considerations were in conflict: one, that the professional should use the best available scientific tools; and the other, that the professional should do a personal examination of the subject. Dr. Faust testified that the necessary psychological tests had been done and he was able to evaluate the results of those tests as to Blythe. He further testified that he considered doing a personal interview, but given that all the relevant tests had been done and the results were available to him, and given also that the literature did not support doing an unstructured interview with Blythe as a means which would increase the accuracy of his judgment, he decided to follow the ethical guideline of using the best available scientific tools (the results of tests which were already available to him).

¶23 Blythe also presented testimony from an expert witness who examined him at Dr. Stratford's request in 1992, Missoula licensed clinical psychologist Dr. Herman Walters. Dr. Walters testified that there are four situations in which one should be particularly attuned to the possibility of malingering: when the psychological examination takes place in a medical/legal setting; when the symptom picture presented seems to be substantially beyond what is available by way of objective data; when the individual does not seem to be

complying with and participating in treatment; and when the individual has a diagnosis of antisocial personality disorder.  On cross-examination, Dr. Walters admitted that malingering was a possibility in this case because at least two of the four situations--medical/legal setting and symptoms beyond what is available by objective data--and possibly a third--noncompliance in and nonparticipation with treatment--were present.

¶24  Blythe also argues that the court did not adequately consider the possibility that, although he was malingering, he was also suffering from mental illness which made it impossible for him to work.  Dr. Faust addressed that issue rather extensively in his testimony.  He opined that it would be very difficult for someone with a serious mental disorder to produce the kinds of test results Blythe obtained on the MMPI's, and that Blythe's activities were inconsistent with someone as mentally ill as his MMPI scores indicated. Further, Dr. Faust stated that the symptoms Blythe reported did not match up with his behavior in a number of respects:

> For example, if a person is constantly hearing voices, constantly
> seeing things, having all of these delusions, I mean, this is not
> a subtle thing.  This person cannot be at work a year and a half
> tending to life and death matters.

¶25  The Workers' Compensation Court set forth other evidence supporting a finding that Blythe was malingering.  The testimony of Blythe's friends and co-workers conflicted as to whether changes in his behavior after the needle stick supported his claimed mental disorder.  Several co-workers testified that there had been no change in Blythe's behavior and that he had always been intellectual, anti-social, and cynical, with "a fatalistic negative attitude."   The court noted that Blythe's diary entries beginning within two days after the needle stick incident demonstrated his anger at the hospital and preoccupation with filing a lawsuit --"The element of secondary gain was . . . fully present." Class notes taken by Blythe in a class on AIDS after the needle stick referred in several places to the possibility of litigation and a large settlement in his case.  The court further noted that the acknowledged deterioration in Blythe's job performance after the needle stick could be explained by his demonstrated anger and hostility toward the hospital and his supervisor.

¶26  Evidence from witnesses including Blythe himself established that Blythe's statements to Dr. Stratford about a post-needle stick decline in his educational pursuits were exaggerated--there had not been a dramatic decline, as Blythe had led Dr. Stratford to believe.  As to symptoms of mental illness, the court found that Blythe did not make any notations in his meticulous diary that he was suffering from hallucinations until just before he first saw Dr. Stratford in October 1989, whereas he told Dr. Stratford that he had been hallucinating for months, since thirty days after the needle stick.  Blythe's diary further contained numerous notations supporting the Workers' Compensation Court's finding that he had a "preoccupation with launching a lawsuit" to recover damages as a result of the needle stick.

¶27  The Workers' Compensation Court made extensive findings on these and other factors which led it to determine that Blythe's mental illness was

malingered. After reviewing the record, we conclude that substantial credible evidence supports the Workers' Compensation Court's findings that Blythe feigned his illness.

¶28 We affirm the decision of the Workers' Compensation Court.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON
/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART

Justice William E. Hunt, Sr., dissenting.

¶29 I dissent. The medical testimony in this case was given primarily by Dr. William Stratford, a Missoula, Montana, board-certified psychiatrist, and by Dr. David Faust, on behalf of the insurance company. Dr. Stratford treated the claimant from October 1989, through the time of the trial, a period of about six years, and found that claimant suffered from a schizoaffective disorder, or schizoaffective schizophrenia. Dr. Stratford treated him with counseling and various psychotropic medications. Dr. Stratford testified that in his opinion claimant was not malingering, and that his mental illness was precipitated by the needle stick incident and that it was totally disabling. The record shows that the claimant could work prior to the needle incident and thereafter became totally disabled. The claimant was paid compensation for the total disability.

¶30 Dr. David Faust testified on behalf of EBI/Orion Group and based his testimony on the records he reviewed. He did not at any time examine the claimant but explained to the court that he could give an expert opinion based on the claimant's test results and Dr. Stratford's records of treatment. Dr. Faust admitted he had never directly expressed an opinion that an individual is malingering before this case, but was prepared to do so here because he had never seen a case of such "overwhelming" evidence of malingering. Dr. Faust was in the courtroom and observed the claimant during the proceedings. The only time he observed the claimant outside of the courtroom was during a recess when he saw the claimant lighting a cigarette for another person. Dr. Faust thought claimant's conduct during this act was more like his normal self rather than the act he was putting on in the courtroom. There is no explanation of the difference in conduct.

¶31 While I agree with the majority opinion that a treating physician's opinion is not always conclusive it must still be given the weight it deserves. But, I believe that in this case, the treating physician who treated the claimant for a period of six years and testified that claimant was injured as claimed and is presently totally disabled, is far more credible and believable than any other

evidence produced to show that claimant was not disabled.

¶32  I do not agree with the majority opinion that there is substantial credible evidence to support the finding that Blythe feigned his illness.  From my examination of the record, I conclude that the evidence is otherwise and, for that reason, I would reverse the judgment of the Workers' Compensation Court.

/S/  WILLIAM E. HUNT, SR.