No. 98-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 158

295 Mont. 120

983 P.2d 300

COLIN G. PATERSON,

Petitioner and Appellant,

v.

MONTANA CONTRACTOR

COMPENSATION FUND,

Respondent and Insurer,

and

DICK ANDERSON CONSTRUCTION,

Employer.

APPEAL FROM: Workers' Compensation Court

State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard J. Martin; Linnell, Newhall, Martin & Schulke, Great Falls, Montana

For Respondent:

Bradley J. Luck; Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs: December 17, 1998

Decided: July 8, 1999

Filed:

No

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1. Colin G. Paterson (Paterson) appeals from the findings of fact, conclusions of law and judgment of the Workers' Compensation Court denying his claim for temporary total disability benefits relating to a nonwork-related incident in July of 1996. We affirm.

¶2. The dispositive issue on appeal is whether the Workers' Compensation Court's finding that Paterson's 1995 work-related injury reached maximum healing prior to his 1996 nonwork-related injury is supported by substantial credible evidence.

¶3. We also address, briefly, whether the Workers' Compensation Court applied the correct burden of proof and whether the Workers' Compensation Court's finding that the incident of July 4, 1996, was a permanent aggravation of Paterson's back condition is supported by substantial credible evidence.

BACKGROUND¶4. *Paterson is a carpenter who had been a professional artist in the past. In March of 1995, Dick Anderson Construction (Anderson) hired Paterson as a commercial carpenter, a position which generally involves heavier labor than residential carpentry. On April 13, 1995, Paterson injured his back at work when he slipped while carrying two steel forms, causing him to "twist and jerk" in an effort to keep his balance.*

¶5. Paterson left work early the day of the injury, but did not file a workers' compensation claim with Anderson's insurer, the Montana Contractor Compensation Fund (MCCF). He did experience pain in his left buttocks, the back of his left thigh and his lower back, however, and received five chiropractic treatments

in April and May of 1995. Anderson laid Paterson off on April 24, 1995, due to lack of work.

¶6. Paterson subsequently worked for Rosenbaum Construction in May of 1995. Later that month, Paterson returned to work for Anderson as a commercial carpenter and again was laid off due to lack of work in September of 1995. In October of 1995, Talcott Construction (Talcott) hired Paterson as a commercial carpenter and laid him off the following month. During the winter and spring of 1995-96, Paterson remodeled a bar and helped perfa tape and paint a friend's house.

¶7. Talcott reemployed Paterson on July 1, 1996. On July 4, 1996, Paterson injured his back while working in his yard. He sought treatment at Columbus Convenience Care, received a shot of Demerol and a prescription for pain pills, and did not return to work for Talcott. Following his nonwork-related injury on July 4, 1996, Paterson continued to experience lower back pain and, in November of 1996, an MRI disclosed that he had a "moderately-sized right posterior disc protrusion at L4/5 level . . . [and] a small posterior protrusion at L1/2."

¶8. Paterson saw several physicians--including Dr. Paul Gorsuch, a neurosurgeon--in the months after his 1996 nonwork-related injury. Dr. Gorsuch later referred Paterson to Dr. Ronald Peterson, a specialist in occupational and sports medicine, who became and remained Paterson's treating physician. Prior to the hearing, Dr. Peterson opined via letter that Paterson's 1995 work-related injury had not reached maximum healing prior to his 1996 nonwork-related injury. His opinion was based in part on Paterson's subjective reports to him.

¶9. In December of 1996, Paterson filed a workers' compensation claim with the MCCF alleging that his 1996 nonwork-related injury was an exacerbation of his 1995 work-related injury and, therefore, compensable. The MCCF accepted liability for the 1995 work-related injury. With regard to the 1996 nonwork-related injury, however, the MCCF disputed liability, asserting that Paterson's subsequent wage loss and medical expenses resulted from a new injury or aggravation suffered on July 4, 1996.

¶10. Paterson ultimately filed a petition in the Workers' Compensation Court seeking compensation and benefits for the 1996 nonwork-related injury. During the two-day hearing on his petition, Paterson testified he experienced ongoing back pain

after the 1995 work-related injury and was able to perform only light labor thereafter. Two witnesses corroborated his testimony. The MCCF presented numerous witnesses who testified Paterson performed heavy labor without complaining of back pain after his April 13, 1995, work-related injury.

¶11. Dr. Peterson was the only physician to testify in person at the hearing. He testified after Paterson presented his case and before the MCCF presented all its witnesses. Because his opinion would be based in part on subjective reports, both parties asked Dr. Peterson for his opinion on whether Paterson had reached "maximum healing" after the work-related injury in April of 1995 in light of their significantly different versions of events following that injury. Since the MCCF had not yet called its witnesses, it presented Dr. Peterson with a hypothetical scenario consisting of three components which it intended to establish through its witnesses' subsequent testimony. Based on the MCCF's hypothetical, Dr. Peterson agreed that Paterson did reach maximum healing prior to his 1996 nonwork-related injury. Paterson then paraphrased his version of events based on his witnesses' testimony and Dr. Peterson opined that Paterson had not reached maximum healing prior to his 1996 nonwork-related injury.

¶12. After the hearing, the Workers' Compensation Court entered extensive findings of fact, including findings that Paterson reached maximum healing prior to the 1996 nonwork-related injury and that the latter injury was a permanent aggravation of his back condition. Those findings were based on the Workers' Compensation Court's determinations that the MCCF's witnesses were credible and its three-component hypothetical scenario had been proven, as well as the court's reliance on Dr. Peterson's opinions. The Workers' Compensation Court also entered conclusions of law, together with its judgment denying Paterson benefits for his 1996 nonwork-related injury. Paterson appeals.

DISCUSSION¶13. Is the Workers' Compensation Court's finding that Paterson's 1995 work-related injury reached maximum healing prior to his 1996 nonwork-related injury supported by substantial credible evidence?

¶14. Workers' compensation benefits are determined by the statutes in effect on the date of injury. King v. State Compensation Ins. Fund (1997), 282 Mont. 335, 337, 938 P.2d 607, 608 (citation omitted). Here, Paterson's work-related injury occurred in April of 1995, and, as a result, the 1993 workers' compensation statutes are applicable.

**¶15. In this case, Paterson sought temporary total disability benefits. Temporary total disability means "a condition resulting from an injury . . . that results in total loss of wages and exists until the injured worker reaches maximum medical healing." Section 39-71-116(28), MCA (1993). "[A] worker is eligible for temporary total disability benefits when the worker suffers a total loss of wages as a result of an injury and until the worker reaches maximum healing" and the determination of temporary total disability "must be supported by a preponderance of medical evidence." Section 39-71-701(1) and (2), MCA (1993). In addition,**

[i]f a claimant who has reached maximum healing suffers a subsequent nonwork-related injury to the same part of the body, the workers' compensation insurer is not liable for any compensation or medical benefits caused by the subsequent nonwork-related injury.

Section 39-71-407(5), MCA (1993). Maximum healing is the "point in the healing process when further material improvement would not be reasonably expected from primary medical treatment." Section 39-71-116(14), MCA (1993).

**¶16. At the outset of the hearing, the Workers' Compensation Court stated that the primary issue before it was "whether or not [Paterson] reached maximum medical healing with respect to the injuries of '95." In other words, it was "just an issue of whether or not [Paterson] had reached maximum medical healing before this exacerbation or aggravation of July of 1996." Paterson's counsel agreed.**

**¶17. As mentioned above, the MCCF presented Dr. Peterson with a hypothetical scenario consisting of three components during the hearing. In the first component, the MCCF set forth a factual scenario pertaining to Paterson's work history subsequent to the 1995 work-related injury, including for whom he worked and the type of work he performed. The MCCF emphasized Paterson's ability to engage in heavy labor involving bending, lifting, stooping and twisting, and that Paterson engaged in such labor for extended periods of time without exhibiting any apparent back problems or seeking additional medical care for his back after May of 1995. The second component involved an assumption that Paterson was not fearful of losing current--or obtaining future--employment if he mentioned an ongoing back problem. The third component involved an assumption that medical care was affordable and available after Paterson's final chiropractic treatment in May of 1995. Assuming those three components to be true, Dr. Peterson agreed that Paterson reached maximum healing prior to his 1996 nonwork-related injury. The MCCF**

then put on its witnesses in an effort to establish the facts contained in its hypothetical.

¶18. The Workers' Compensation Court found that each of the three components contained in the MCCF's hypothetical had been established. Relying on Dr. Peterson's opinion premised on those facts, the court ultimately found that Paterson reached maximum healing prior to his nonwork-related injury in July of 1996, and, on that basis, concluded pursuant to § 39-71-407(5), MCA (1993), that the MCCF was not liable for compensation or medical benefits.

¶19. We review the Workers' Compensation Court's findings of fact to determine whether they are supported by substantial credible evidence. Kuntz v. Nationwide Mut. Fire Ins. Co., 1998 MT 5, ¶ 16, 287 Mont. 142, ¶ 16, 952 P.2d 422, ¶ 16 (citation omitted). Accordingly, we address the Workers' Compensation Court's findings that each of the three components in the MCCF's hypothetical scenario was proven and its ultimate finding that Paterson reached maximum healing prior to his 1996 nonwork-related injury.

*A. Paterson's work history and back symptomology after the April 13, 1995, work-related injury*

¶20. The MCCF presented five witnesses who testified about Paterson's work history and back symptomology after his work-related injury in April of 1995. Terry Gibson, Scott Watson and Greg Schermele (Schermele) observed Paterson's work activities while employed by Anderson from May to September of 1995, the months immediately following Paterson's work-related injury. In essence, they all testified that Paterson's work was heavy labor involving bending, lifting, stooping and twisting. They also testified that Paterson did not complain of ongoing back pain.

¶21. Larry Dravecky (Dravecky) and Pat Laabs (Laabs), both superintendents for Talcott, observed Paterson's work activities in October and November of 1995. They testified that Paterson engaged in heavy labor on a daily basis and did not complain of back pain. Laabs also testified that Paterson reported no back problems in a health screening taken before he began working for Talcott.

¶22. The Workers' Compensation Court expressly found the testimony of Schermele, Dravecky and Laabs credible. Based on that testimony, the Workers' Compensation Court found that Paterson's work history and back symptomology were consistent

with the factual scenario set forth in the first component of the MCCF's hypothetical to Dr. Peterson; namely, that Paterson continued to engage in heavy labor after his 1995 work-related injury and did so without apparent back problems. The referenced testimony constitutes substantial credible evidence supporting the Workers' Compensation Court's finding and we do not substitute our judgment for that of the Workers' Compensation Court, as the trier of fact, concerning witness credibility. *See* Walls v. Travelers Indem. Co. (1997), 281 Mont. 106, 111, 931 P.2d 712, 715 (citation omitted).

¶23. It is true that Paterson presented his own testimony--as well as that of several other witnesses--in support of his contentions that he performed only light carpentry duties and supervisory work for which he had an assistant after his injury in April of 1995. Thus, there was conflicting evidence on these matters. Our standard in reviewing the Workers' Compensation Court's findings, however, is whether sufficient evidence exists to support those findings. *See Kuntz*, ¶ 16 (citation omitted). We do not determine whether evidence exists to support contrary findings. *Walls*, 281 Mont. at 110-11, 931 P.2d at 715 (citation omitted). Nor will we substitute our judgment for that of the Workers' Compensation Court regarding the weight to be given to the evidence. *Walls*, 281 Mont. at 111, 931 P.2d at 715 (citation omitted).

¶24. Here, faced with conflicting evidence regarding Paterson's work history and back symptomology after his work-related injury in April of 1995, the Workers' Compensation Court accepted the testimony presented by the MCCF and rejected that introduced by Paterson. In addition, the Workers' Compensation Court expressly found that three of the MCCF's witnesses were credible and characterized portions of the testimony of Paterson and his supporting witnesses as fabricated, false, unpersuasive and unconvincing. We conclude that substantial credible evidence supports the Workers' Compensation Court's finding that Paterson's work history and back symptomology were as presented in the MCCF's hypothetical to Dr. Peterson.

*B. Fear of losing current--or not obtaining future--employment*

¶25. Jeff Albrecht (Albrecht), a carpenter for Anderson, worked with Paterson in the autumn of 1995. He testified that Paterson occasionally complained of back problems, but did not complain more than anyone else Paterson's age. In addition, Paterson's own testimony indicated that he did not forego reporting ongoing back

pain because he was fearful of not obtaining future employment. According to Paterson, when superintendent Dravecky hired him to work for Talcott in July of 1996, they agreed that Paterson would work only three days a week and would have an assistant to help him with the heavier work because of his ongoing back pain. The Workers' Compensation Court found that Paterson was not "deterred from reporting back pain to his current or prospective employers on account of any fear that he might lose employment or might not be able to obtain employment."

¶26. The referenced testimony supports the court's finding. Moreover, the determination of whether Paterson was "fearful" was within the province of the Workers' Compensation Court as the trier of fact and we will not substitute our judgment on review. *See Walls*, 281 Mont. at 111, 931 P.2d at 715 (citation omitted). We conclude that substantial credible evidence supports the Workers' Compensation Court's finding that Paterson was not fearful of losing current--or not obtaining future--employment if he reported ongoing back pain.

*C. Affordable and available medical care*

¶27. Dr. Peterson testified that Paterson reported discontinuing his chiropractic treatments after April and May of 1995, notwithstanding ongoing back pain, because the treatment was a financial strain and he felt it aggravated his symptoms. As a result of Paterson's report, Dr. Peterson testified that, in order to agree Paterson reached maximum healing before the 1996 nonwork-related injury, he would have to be assured Paterson knew medical care was affordable and available.

¶28. The Workers' Compensation Court was not persuaded that Paterson did not seek medical care after his chiropractic treatments in April and May of 1995 because of the cost or unavailability of care. Paterson's chiropractic records indicate that he sought treatments immediately after his April 1995 work-related injury and his July 1996 nonwork-related injury. In addition, Paterson testified he was aware workers' compensation insurance was available after his 1995 work-related injury which would have allowed him to explore different treatments. Paterson also was aware he had access to medical insurance after his 1995 work-related injury through the Montana Contractors Association Trust.

¶29. The Workers' Compensation Court was faced with deciding whether Paterson discontinued his treatments because his back pain had subsided or because of the

cost and unavailability of medical care. It was within the court's province, as the trier of fact, to weigh the evidence and assess Paterson's credibility. *See Walls*, 281 Mont. at 111, 931 P.2d at 715 (citation omitted). We conclude that substantial credible evidence supports the Workers' Compensation Court's finding that Paterson did not fail to seek medical care after his chiropractic treatments in April and May of 1995 because of the cost or unavailability of care.

¶30. Having found that each of the three components of the MCCF's hypothetical was established, the Workers' Compensation Court ultimately found that Paterson reached maximum healing after his 1995 work-related injury and before his 1996 nonwork-related injury. The court's maximum healing finding was based on Dr. Peterson's opinion that, if the three components were established, Paterson had reached maximum healing. Dr. Peterson's opinion constitutes substantial credible evidence supporting the Workers' Compensation Court's finding that Paterson reached maximum healing prior to his 1996 nonwork-related injury.

¶31. Paterson contends, however, that the MCCF presented no affirmative medical testimony on the issue of maximum healing. He asserts that the only substantial credible evidence on the issue was Dr. Peterson's unequivocal prehearing opinion that "I do not believe that Mr. Paterson was at maximum medical improvement prior to the permanent exacerbation of his back experienced on 7/04/96." We disagree.

¶32. As discussed above, Dr. Peterson's prehearing medical opinion on the absence of maximum healing was based in part on Paterson's subjective reports. Presented with the MCCF's three-component hypothetical and asked to assume that the facts were true, Dr. Peterson changed his opinion and testified that, under those facts, Paterson had reached maximum healing prior to his 1996 nonwork-related injury. His revised opinion is no less "affirmative medical testimony" than the original opinion on which Paterson premises his argument.

¶33. Paterson next contends that returning to work does not, in and of itself, resolve the issue of maximum healing. We agree. *See, e.g.,* O'Brien v. Central Feeds (1990), 241 Mont. 267, 273, 786 P.2d 1169, 1172 (citation omitted). As discussed above, however, the Workers' Compensation Court's finding that Paterson reached maximum healing was based on a number of factors.

¶34. Paterson also contends that the Workers' Compensation Court's finding that he was not credible is misplaced because the maximum healing determination was not dependent on his credibility. This contention is incorrect.

¶35. As discussed above, Paterson's credibility was relevant to the maximum healing determination because Dr. Peterson's prehearing opinion that Paterson had not reached maximum healing before the nonwork-related injury on July 4, 1996, was based on Paterson's report of his work history and back symptomology after the April 13, 1995, work-related injury. Once the Workers' Compensation Court rejected Paterson's version of those matters and found that the facts presented by the MCCF regarding subsequent work and back symptomology were established, a significant portion of the basis for Dr. Peterson's initial opinion was negated.

¶36. On the record before us, we conclude that the Workers' Compensation Court's findings regarding Paterson's work history and back symptomology, his lack of fear of losing current--or not obtaining future--employment, and the affordability and availability of medical care are supported by substantial credible evidence. We further conclude that the Workers' Compensation Court's finding that Paterson reached maximum healing prior to his 1996 nonwork-related injury is supported by substantial credible evidence.

¶37. Did the Workers' Compensation Court apply the correct burden of proof?

¶38. Paterson contends that the Workers' Compensation Court erred by failing to shift the burden to the MCCF, pursuant to such cases as EBI/Orion Group v. Blythe, 1998 MT 90, 288 Mont. 356, 957 P.2d 1134, Caekaert v. State Comp. Mut. Ins. Fund (1994), 268 Mont. 105, 885 P.2d 495, and Belton v. Carlson Transport (1983), 202 Mont. 384, 658 P.2d 405, after he established his entitlement to compensation by showing a clear connection between his current condition and the April 13, 1995, work-related injury accepted by the MCCF. According to Paterson, the MCCF did not meet its burden under those cases and, therefore, a reversal of the Workers' Compensation Court's decision is required. We disagree.

¶39. In response to Paterson's petition for temporary total disability benefits, the MCCF relied on § 39-71-407(5), MCA (1993), in asserting it was not liable for Paterson's July 4, 1996, nonwork-related injury because he reached maximum healing before his subsequent nonwork-related back injury. The MCCF maintained

its position in the pretrial order by contending it was not liable for Paterson's claimed disability and medical benefits following the "non-industrial aggravation, pursuant to § 39-71-407, MCA . . . ." The pretrial order also stated that whether Paterson had attained medical stability at any time prior to the July 4, 1996, nonwork-related injury was at issue. Thus, it is clear that the MCCF sought to avoid liability under § 39-71-407(5), MCA (1993), from the outset of the proceeding in the Workers' Compensation Court.

¶40. In addition, while Paterson's Proposed Findings of Fact and Conclusions of Law raised *Belton* and *Caekaert*, he conceded therein that § 39-71-407(5), MCA (1993), was at issue and that the burden on the MCCF effectively was the same under either analysis: to establish that he had reached maximum healing and had sustained an injury after doing so. Paterson's stated position was that the MCCF had not met its burden of proving he attained "maximum healing at any time from the initial injury to the present" and, therefore, the MCCF was liable. The Workers' Compensation Court determined that § 39-71-407(5), MCA (1993), applied and that, on the basis of its findings that Paterson suffered a "subsequent nonwork-related injury" to his back on July 4, 1996, and reached maximum healing prior to that nonwork-related injury, the MCCF was not liable for Paterson's subsequent medical expenses or compensation benefits pursuant to "the express and plain terms of [§ 39-71-407(5), MCA (1993)]."

¶41. On the record before us, it is clear that the Workers' Compensation Court did not err in concluding that § 39-71-407(5), MCA (1993), applies in this case and that the MCCF met its burden thereunder. Nor need we address the *Caekaert* and *EBI/ Orion* line of cases here. Those cases are factually distinguishable from the present case in that, unlike the present case, they involved subsequent insurers and did not involve § 39-71-407(5), MCA (1993), which expressly governs maximum healing prior to a subsequent nonwork-related injury.

¶42. Moreover, since Paterson's position in the Workers' Compensation Court was that the MCCF's burden was essentially the same under § 39-71-407(5), MCA (1993), and *Caekaert*, and that the MCCF's burden was to establish that he reached maximum healing prior to his 1996 nonwork-related injury, Paterson is asking us to address a new legal theory on appeal. We do not address for the first time on appeal a party's change in legal theory. Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citation omitted).

**¶43. We conclude that Paterson has not established error by the Workers' Compensation Court relating to the burden of proof.**

**¶44.** Is the Workers' Compensation Court's finding that the incident of July 4, 1996, was a permanent aggravation of Paterson's back condition supported by substantial credible evidence?

**¶45. The Workers' Compensation Court found that Paterson's 1996 nonwork-related injury was a permanent aggravation and that Dr. Peterson's opinion in that regard was not seriously disputed. Paterson contends that the Workers' Compensation Court erred in determining that his 1996 nonwork-related injury was a permanent aggravation rather than a temporary exacerbation which did not materially and permanently alter his condition. We review the record to determine whether substantial credible evidence exists to support the Workers' Compensation Court's findings.** *See Kuntz*, **¶ 16 (citation omitted).**

**¶46. Dr. Peterson agreed on direct examination that he previously had rendered an opinion that the events of July 4, 1996, "permanently aggravated" Paterson's back condition. His opinion did not change during his testimony and it constitutes substantial credible evidence supporting the Workers' Compensation Court's finding that Paterson's 1996 nonwork-related injury was a permanent aggravation.**

**¶47. The Workers' Compensation Court's finding that there was "no serious dispute" that Paterson's 1996 nonwork-related injury permanently aggravated his back condition also is supported by the record. As mentioned above, Dr. Peterson testified he had previously rendered an opinion that the events of July 4, 1996, "permanently aggravated" Paterson's back condition and Paterson did not cross-examine Dr. Peterson on the question of "permanent aggravation."**

**¶48. Finally, we reject Paterson's effort on appeal to distinguish between a permanent "aggravation" and a temporary "exacerbation" on the basis that he did not rely on such a distinction in the Workers' Compensation Court. While Paterson repeatedly used the term "exacerbation" in the pretrial order and his Proposed Findings of Fact and Conclusions of Law, he relied on Dr. Peterson's prehearing determination that the 1996 nonwork-related injury was a "permanent" exacerbation of the 1995 work-related injury. In addition, his Proposed Findings of Fact and Conclusions of Law requested a conclusion that Paterson's 1996 nonwork-**

related injury was a "permanent exacerbation" of the 1995 work-related injury. Thus, the distinction Paterson attempts to draw on appeal between a "temporary exacerbation" and a "permanent aggravation" is essentially a change in theory from that presented in the Workers' Compensation Court, and we do not address new theories raised for the first time on appeal. *See Unified Industries, Inc.*, ¶ 15 (citation omitted).

**¶49. Affirmed.**

/S/ KARLA M. GRAY

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.